UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| JACQUES BENOIT and<br>CAMILLE COLLETTE, | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 18-1104 (RC) |
| | : | | |
| v. | : | Re Document No.: | 8 |
| | : | | |
| DISTRICT OF COLUMBIA, | : | | |
| | : | | |
| Defendant. | : | | |

## MEMORANDUM OPINION

### DENYING PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

### I. INTRODUCTION

Plaintiffs Jacques Benoit and Camille Collette brought this suit against the District of Columbia under the Individuals with Disabilities Education Act to seek review of various portions of a February 18, 2018 Hearing Officer Determination concerning the education of their son E.B. As alleged in their complaint, the Hearing Officer Determination incorrectly denied relief on a number of Plaintiffs' claims. In this motion however, Plaintiffs ask for a preliminary injunction compelling Defendant's compliance with those portions of the Hearing Officer Determination on which they prevailed. While the Court is inclined to agree with Plaintiffs' substantive arguments regarding Defendant's payment obligations under the HOD, the relief requested falls outside the scope of the claims brought in the complaint. Plaintiffs have also failed to show that they will suffer irreparable harm absent an injunction. Accordingly, the Court denies the preliminary injunction. Plaintiffs are free to amend the complaint to bring a claim for enforcement of the relevant portions of the Hearing Officer Determination.

## II. FACTUAL BACKGROUND

This case marks the latest development in a long-running dispute between Plaintiffs Jacques Benoit and Camille Collette ("Benoit and Collette") and Defendant the District of Columbia ("the District") regarding the education of E.B., Benoit and Collette's son. E.B. is a 9-year old child with Autism Spectrum Disorder. Compl. ¶ 4, ECF No. 1. In the spring of 2012, E.B. was determined to be eligible for special education services and, pursuant to the Individuals with Disabilities Education Act ("IDEA"), the District developed an Individualized Education Program ("IEP") for him. *See id.* ¶ 7. Between 2012 and 2014, Benoit and Collette allege that the District failed to offer school placements that could implement the IEP and refused to acknowledge E.B.'s disability. *See id.* ¶¶ 8-19. And over the next three years, Benoit and Collette allege that the District developed updated IEPs in 2014, 2015, and 2016 that each significantly decreased the amount of special education services provided to E.B. *See id.* ¶¶ 22, 27, 31. Benoit and Collette placed E.B. in private school at The Auburn School between 2014 and 2016 rather than go through with the District's IEPs. *See id.* ¶¶ 25, 28. When E.B. was placed at the public Murch Elementary School between 2016 and 2017, they allege that he suffered significant emotional and behavioral issues. *See id.* ¶ 33. After the District failed to update E.B.'s IEP at the conclusion of the 2016-2017 school year, Benoit and Collette returned him to The Auburn School for 2017-2018, *see id.* ¶ 42, and began legal action.

Between January and February 2018, an administrative hearing was held pursuant to the IDEA regarding E.B.'s education. Compl. ¶ 47. On February 18, 2018, the Hearing Officer issued a Hearing Officer Determination ("HOD"). Compl. ¶ 48. In the HOD, the Hearing Officer found that the District had denied E.B. a Free and Appropriate Education ("FAPE") as required by the IDEA by failing to provide an appropriate IEP for the 2016-2017 and 2017-2018

school years. *See* HOD Determination at 27–28, 31, Pl.'s Second Mot. Prelim. Inj. Ex.1, ECF No. 8-3. After finding that Benoit and Collette had acted reasonably and placed E.B. in an appropriate private school following the District's denial of a FAPE for the 2017-2018 school year, the Hearing Officer ordered the District to reimburse Benoit and Collette for the expenses associated with enrolling E.B. at The Auburn School between the fall of 2017 and February 18, 2018. *See id.* at 31. And as compensatory education for the denial of the FAPE for the 2016-2017 school year, the Hearing Officer also ordered that the District "fund [E.B.'s] continued placement at [The Auburn School] for the remainder of the 2017-2018 school year." *Id.* at 37. The Hearing Officer emphasized that any concerns about the lack of interaction between students at The Auburn School and typically developing peers were "offset by the undisputed fact that [E.B.] [was] receiving educational benefit at" The Auburn School. *Id.* at 38. On the other hand, the HOD also denied relief on a number of Benoit and Collette's claims, including claims for relief based on the District's actions in the 2015-2016 school year that the Hearing Officer determined were barred by the IDEA's statute of limitations. *See* Compl. ¶ 49.

On May 9, 2018, Benoit and Collette filed this lawsuit to challenge those portions of the HOD that denied them relief. *See generally id.* Benoit and Collette indicated that they were bringing "this Complaint seeking relief for denial of a Free and Appropriate Education (herein FAPE)[,]" *id.* ¶ 1, and stated nine counts for violations of the IDEA that the Hearing Officer was alleged to have improperly denied relief on at the February 18, 2018 hearing, *id.* ¶¶ 51–69. In their request for relief, Benoit and Collette specifically asked that the Court "[f]ind that [the] Hearing Officer . . . erred" as set forth in the Complaint. *Id.* ¶ 69.

In August 2018, Benoit and Collette filed two motions for a preliminary injunction, seeking 1) a "stay put" injunction pursuant to the IDEA requiring that the District fund E.B.'s

continued attendance at The Auburn School during the pendency of the case, *see* Pl.'s First Mot. Prelim. Inj., ECF No. 7, and 2) an injunction compelling the District to comply with the terms of the HOD requiring it to fund E.B.'s placement at The Auburn School between February 18, 2018 and the end of the 2017-2018 school year, for a total of $23,672, *see* Pl.'s Second Mot. Prelim. Inj. The District filed its opposition to both motions on August 24, 2018, arguing, *inter alia*, that the second motion was moot because the District had approved payment to The Auburn School for the remainder of the 2017-2018 tuition and the payment would be made shortly. *See* Def.'s Mem. Opp'n Mot. Prelim. Inj. at 5–6, ECF No. 10. After a hearing on August 27, 2018, the Court granted the first motion and took the second motion under advisement. *See* Aug. 27, 2018 Minute Order, No. 1-18-cv-01104-RC.

On September 4, 2018, the District filed a status report where it represented that payment to The Auburn School for the remainder of the 2017-2018 tuition would be made on September 10. *See* Def.'s Sept. 4 Status Report, ECF No. 17. On September 11, 2018, the District filed another status report noting that a check for the payment had issued on September 10. *See* Def.'s Sept. 11 Status Report, ECF No. 18. However, just five days later on September 16, 2018, Benoit and Collette filed their own status report indicating that the District had only paid $10,672 to The Auburn School on September 10, leaving $13,000 unpaid. *See* Pl.'s Sept. 16 Status Report, ECF No. 19. The District confirmed as much on September 24, 2018, noting for the first time that it disputed the tuition amount claimed by Benoit and Collette and that it would not pay the remaining $13,000. *See* Def.'s Sept. 24 Status report, ECF No. 20.

On September 26, 2018, Benoit and Collette filed their reply in further support of the motion for a preliminary injunction. *See* Pl.'s Reply to Opp'n, ECF No. 21. On October 1, 2018, Benoit and Collette filed a supplemental memorandum to their reply, where they noted that

4

The Auburn School had informed them that failure to pay the $13,000 by October 31 would trigger a monthly 2.5% late fee and result in their account being sent to collection. *See* Supplement to Pl.'s Reply to Opp'n at 1, ECF No. 22.

### III. LEGAL STANDARD

"[A] preliminary injunction is an injunction to protect [the movant] from irreparable injury and to preserve the court's power to render a meaningful decision after a trial on the merits." *Select Milk Producers, Inc. v. Johanns*, 400 F.3d 939, 954 (D.C. Cir. 2005) (quoting 11A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedures § 2947 (2d ed. 1992)). Preliminary injunction is an "extraordinary remedy," and one that is "never awarded as of right." *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).

A plaintiff seeking preliminary injunctive relief "must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014) (quoting *Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011)). When seeking such relief, "the movant has the burden to show that all four factors, taken together, weigh in favor of the injunction." *Abdullah v. Obama*, 753 F.3d 193, 197 (D.C. Cir. 2014) (quoting *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1292 (D.C. Cir. 2009)) (internal quotation marks omitted).

### IV. ANALYSIS

Benoit and Collette argue that the Court should grant a preliminary injunction compelling the District to pay for the remainder of E.B.'s 2017-2018 tuition, as required by the HOD, and that they prevail on all four factors of the preliminary injunction test. *See* Pl.'s Mem. Supp. at 3. The District opposes the injunction on several grounds, including standing, prudential mootness,

subject matter jurisdiction, and irreparable harm. The Court briefly considers the first two points, before addressing the District's arguments on jurisdiction and irreparable harm. The Court agrees that, as currently pled, it does not have subject matter jurisdiction over the claim for enforcement of the HOD. And even if the Court had subject matter jurisdiction, Benoit and Collette have not demonstrated that they will suffer irreparable harm absent an injunction.

### A. Standing to Bring an HOD Enforcement Claim

First, the District argues that Benoit and Collette lack standing "to assert a claim on behalf of the Auburn School." Def.'s Mem. Opp'n at 3. The Court briefly addresses, and dismisses, this argument.

A plaintiff bringing any claim in federal court must demonstrate that he has standing to bring such a claim. As the District points out, in order to demonstrate standing, the "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robbins*, 136 S. Ct. 1540, 1547 (2016). "To establish injury in fact, a Plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). The District argues that Benoit and Collette have not suffered a particularized injury because the District owes any tuition payment to The Auburn School rather than to Benoit and Collette. *See* Def.'s Mem. Opp'n at 3–4. The District also argues that the alleged injury is not concrete because it has already agreed to pay for E.B.'s future tuition, per the Court's stay-put order. *See id.*

Benoit and Collette argue, and the Court agrees, that they are bringing a claim on their own behalf rather than on behalf of The Auburn School. *See* Pl.'s Reply at 5. Because Benoit

6

and Collette are ultimately responsible for tuition being paid to the school, and both their financial situation and E.B.'s attendance at the school could be compromised if payment is not made pursuant to the HOD, they are bringing a claim for an injury they will likely suffer rather for an injury The Auburn School might suffer. Both Benoit and Collette's initial memorandum in support and their reply brief make clear that the District's alleged continued noncompliance will cause an injury to E.B.'s education and to their finances. *See* Pl.'s Mem. Supp. at 3–4; Pl.'s Reply at 6. And the District's clear refusal to pay for the $13,000 still in dispute between the parties, as indicated in its September 24 Status Report, *see* Def.'s Sept. 24 Status Report at 2, negates its argument that any alleged injury is not concrete.

Benoit and Collette are claiming that they will suffer an imminent, concrete and particularized injury—nonpayment of $13,000 by the October 31, 2018 deadline will trigger a collections process by The Auburn School and result in harm to them, rather than to the school. Because that injury can be directly traced to the District's failure to make tuition payments pursuant to the HOD and can be remedied by an injunction or declaratory relief, the Court finds that Benoit and Collette have standing to bring a claim for enforcement of the HOD.

### B. **Prudential Mootness**

Second, the Court briefly addresses the District's prudential mootness argument. "Even when a case is not moot in the Article III sense, it will sometimes be 'so attenuated that considerations of prudence and comity for coordinate branches of government counsel the court to stay its hand, and to withhold relief it has the power to grant.'" *Gordon v. Holder*, 85 F. Supp. 3d 78, 81–82 (D.D.C. 2015) (quoting *Chamber of Commerce of U.S. v. U.S. Dep't of Energy,* 627 F.2d 289, 291 (D.C. Cir. 1980)). The District initially argued in its opposition that the Court should deny the motion on the basis of prudential mootness, because the District had resolved an

internal dispute regarding what part of the budget should be used to comply with the HOD and was "working to expedite the payment." Def.'s Mem. Opp'n at 6. However, the District's September 24 Status Report makes clear that the payment described in the opposition was only for part of the amount claimed by Benoit and Collette. *See* Def.'s Sept. 24 Status Report at 2. Benoit and Collette seek an injunction to compel the District to pay $23,672 to The Auburn School. Pl.'s Mot. Prelim. Inj. At 2. The District has agreed to pay—and has paid—$10,672 of those $23,672, but refuses to pay the remaining $13,000. *See* Def.'s Sept. 11 Status Report; Def.'s Sept. 24 Status Report at 2. There is a live dispute as to the remaining $13,000, and the District's prudential mootness argument fails.[1]

### C. Subject Matter Jurisdiction

Third, the District argues that the IDEA does not provide a cause of action to enforce a favorable HOD and that the Court therefore does not have subject matter jurisdiction over Benoit and Collette's request for a preliminary injunction. *See* Def.'s Mem. Opp'n at 2–3. While the Court is not willing to categorically state that the IDEA "[s]upports no cause of action" to enforce a favorable HOD, *id.* at 2, it agrees that it does not have subject matter jurisdiction over the claim in this case. The Court first reviews whether the IDEA supports a cause of action to enforce a HOD, and then whether Benoit and Collette have pled a valid cause of action.

---

[1] The Court notes that, as the District acknowledges in its September 24 Status Report, the parties have disputed the amount the District is required to pay under the HOD for several months. *See* Def.'s Sept. 24 Status Report at 2 (noting that the District provided its position on the scholarship issue in April 2018). Presumably, the District knew of the ongoing dispute when it filed its opposition, because Benoit and Collette made a request for the full $23,672 in their motion for a preliminary injunction. The District's prudential mootness argument in its opposition strikes the Court as somewhat disingenuous, particularly in light of the restricted timeline for payment faced by Benoit and Collette.

8

What remedy is available to parents seeking to enforce a HOD under the IDEA is an unresolved issue that has vexed litigants in this and other circuits for several decades. Both parties in this case point to the D.C. Circuit's opinion in *B.D. v. District of Columbia*, 817 F.3d 792 (D.C. Cir. 2016), the District arguing that it stands for the notion that the IDEA does not provide a cause of action to enforce a HOD, Def.'s Mem. Opp'n at 2, and Benoit and Collette arguing that it leaves open the possibility of an implied cause of action in the IDEA, Pl.'s Reply at 4. In *B.D.*, the D.C. Circuit determined that Section 1415(i)(2)(A) of the IDEA did not support a cause of action for enforcement of a favorable HOD, joining the Fourth Circuit in a circuit split on the issue. *Compare B.D.*, 817 F.3d at 801 (finding no cause of action for enforcement of favorable HOD under § 1415(i)(2)(A) of the IDEA because enforcing party not "aggrieved by the findings and decision"), *and Robinson v. Pinderhughes*, 810 F.2d 1270, 1275 (4th Cir. 1987) (finding similarly with respect to identically worded predecessor to § 1415(i)(2)(A)), *with D.E. v. Central Dauphin Sch. Dist.,* 765 F.3d 260, 276–78 (3d Cir. 2014) (finding that parties seeking enforcement of favorable HOD were aggrieved parties who could bring claim under § 1415(i)(2)(A)), *and Nieves–Márquez v. Puerto Rico,* 353 F.3d 108, 115–17 (1st Cir. 2003) (same).

In *B.D.*, the D.C. Circuit also noted in that its decision did not "necessarily leave[] families like [the Plaintiffs'] without a viable route to relief in federal court." 817 F.3d at 802. Without taking a position on the issue, the opinion pointed out that at least one circuit has found 42 U.S.C. § 1983 to provide a cause of action for enforcement of a HOD. *See id.* (citing *Mrs. W. v. Tirozzi,* 832 F.2d 748, 755 (2d Cir. 1987)); *see also Blackman v. District of Columbia*, 456 F.3d 167, 172 n. 6 (D.C. Cir. 2006) (noting "open question" of whether a § 1983 action can be brought to enforce FAPE right, and assuming without deciding that appellees' § 1983 actions

9

were cognizable). And the D.C. Circuit further noted that it was "aware of no decision specifically foreclosing an IDEA enforcement suit premised on an implied cause of action." *Id.*

Here, the District argues that the IDEA does not provide a cause of action and thus that the Court lacks subject matter jurisdiction. Benoit and Collette retort that the IDEA supports an implied right of action, because leaving parents unable to enforce a HOD would frustrate the act's purpose to ensure that a FAPE be available to disabled children. *See* Pl.'s Reply at 4. This argument is essentially the same as the one used by the First and Third Circuits to justify finding a cause of action in § 1415(i)(2)(A), *see D.E.*, 765 F.3d at 276–78, *Nievez-Márquez*, 353 F.3d at 115–17, and the Court finds merit in the notion that Congress could not have intended to leave parents without a right of action to enforce a HOD.[2] Nonetheless, the Court does not decide the issue because, even assuming that the IDEA supports an implied right of action (or that a HOD can be enforced through a § 1983 or other action), Benoit and Collette did not seek to enforce the HOD in their complaint.[3]

---

[2] Such a right could take the form of a § 1983 action or an implied right of action under the IDEA. In her concurrence in *B.D.*, Judge Millett also identified a third possible avenue for plaintiffs seeking to enforce a HOD:

> Under the IDEA, any "matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child" can be the basis of a due process complaint and hearing. In the federal government's view, a school district's failure to comply with a hearing officer's decision is such a matter. Thus, according to the Department of Education, parents facing a lack of compliance might be able to bring another due process complaint to enforce the prior decision and, if necessary, seek judicial review of any denial of needed relief in that proceeding.

*B.D.*, 817 F.3d at 804 (Millett, J., concurring) (citation omitted) (quoting 20 U.S.C. § 1415(b)(6) & (f)(1)).

[3] While the District did not raise this issue in its opposition, the Court has the power to raise lack of subject matter jurisdiction *sua sponte* at any point in the litigation. *E.g. NetworkIP, LLC v. FCC*, 548 F.3d 116, 120 (D.C. Cir. 2009) ("'It is axiomatic that subject matter jurisdiction may not be waived, and that courts may raise the issue *sua sponte*.'" (quoting *Athens Cmty. Hosp., Inc. v. Schweiker,* 686 F.2d 989, 992 (D.C. Cir. 1982))).

A preliminary injunction has a "limited purpose . . . to preserve the trial court's power to adjudicate the underlying dispute by maintaining the status quo ante." *Select Milk Producers, Inc.*, 400 F.3d at 954. Accordingly, courts "lack jurisdiction over a motion [for a preliminary injunction] when it 'raises issues different from those presented in the complaint.'" *Sai v. TSA*, 54 F. Supp. 3d 5, 9 (D.D.C. 2014) (quoting *Adair v. England*, 193 F. Supp. 2d 196, 200 (D.D.C. 2002). For jurisdiction to exist over a motion for a preliminary injunction, "'the motion must be closely related to the facts, legal issues, and parties'" discussed in the complaint. *Colley v. James*, 254 F. Supp. 3d 45, 68 (D.D.C. 2017) (quoting *Adair*, 193 F. Supp. 2d at 201). Here, the same parties are involved in Benoit and Collette's claim to enforce the HOD as in their claims challenging portions of the HOD they disagree with. However, the enforcement claim involves an entirely different set of facts—unlike the complaint, which focuses on E.B.'s education and the District's actions before the hearing, the enforcement claim centers around the District's actions after the hearing. These facts are not alleged in the complaint. And the legal issues surrounding the enforcement claim are also very different because, unlike a challenge to the HOD, an enforcement claim in this circuit cannot be based on § 1415 of the IDEA. The complaint does not mention § 1983, an implied right of action under the IDEA, or any other legal theory that would support an enforcement claim.

Because the HOD enforcement claim is not raised in the complaint, and neither are the facts nor the legal basis for that claim, the Court finds that it does not have subject matter jurisdiction over the motion for a preliminary injunction. The motion is denied. Benoit and Collette are granted leave to amend their complaint to add a claim for enforcement of the portion of the HOD that granted them relief.

### D. Irreparable Harm

Finally, the District contends that Benoit and Collette cannot prevail on a motion for a preliminary injunction because they have not demonstrated that they will suffer irreparable harm if an injunction is not granted. The Court agrees. Even assuming it had subject matter jurisdiction over Benoit and Collette's claim, the Court would still deny the motion for a preliminary injunction because Benoit and Collette have not pointed to a concrete non-economic harm they will suffer absent an injunction.

"[T]he general rule in this Circuit is 'that economic harm does not constitute irreparable injury.'" *Safari Club Int'l v. Jewell*, 47 F. Supp. 3d 29, 36 (D.D.C. 2014) (quoting *Davis*, 571 F.3d at 1295; *see also Lee v. Christian Coalition of America, Inc.*, 160 F. Supp. 2d 14, 31 (D.D.C. 2001) ("[I]t is well-settled that economic loss alone will rarely constitute irreparable harm."). Courts have recognized an exception to that rule when economic loss has such drastic consequences that it "threatens the very existence of [a] movant's business[,]" *Wisconsin Gas Co. v. F.E.R.C.*, 758 F.2d 669, 674 (D.C. Cir. 1985), or for an individual, will result in extreme poverty, *see Lee*, 160 F. Supp. 2d at 31. And courts have also recognized an exception when the claimed economic loss is uncoverable. *See Safari Club Int'l*, 47 F. Supp. 3d at 36. In all circumstances, the irreparable harm alleged must be "concrete and corroborated, not merely speculative." *E.g. Toxco, Inc. v. Chu*, 724 F. Supp. 2d 16, 30 (D.D.C. 2010).

In their motion on August 22, 2018, Benoit and Collette initially argued that they would suffer irreparable harm absent an injunction because The Auburn School would not let E.B. start the new school year if the remainder of the 2017-2018 tuition was not paid. *See* Pl.'s Mem. Supp. at 3. They then noted in their reply a month later that "based on Defendant's representations that the payment was in process, the school relented and allowed [E.B.] to begin

12

school." Pl.'s Reply at 5. At that point, Benoit and Collette argued that they faced irreparable harm because the school "at any time, could inform Plaintiffs that . . . they w[ould] no longer allow [E.B.] to attend." *Id.* at 6. Finally, in their supplemental reply brief on October 1, 2018, Benoit and Collette explain that The Auburn School has now indicated what will happen if payment is not made by October 31, 2018: their account will go "through a collection process" and they will be imposed a monthly 2.5% late fee. Oct. 1, 2018 E-mail, Ex. 1, Suppl. Pl.'s Reply, ECF No. 22-1.

Benoit and Collette argue that nonpayment to The Auburn School by the October 31 deadline will still constitute irreparable harm because their "credit will be destroyed and assets leaned or seized." The Court disagrees. Benoit and Collette do not point to a concrete non-economic injury: E.B. was able to start studying at The Auburn School, and it appears that failure to pay the remaining tuition for the 2017-2018 school year will not result in his withdrawal, but rather in economic penalties to Benoit and Collette. In addition, it is unclear what consequences will result if Benoit and Collette's account with The Auburn School goes into collection on October 31, 2018. Without more evidence, the claim that their credit will be "destroyed" and "assets leaned or seized" is speculative and insufficient to demonstrate a concrete irreparable harm that will be suffered absent an injunction.

Without a concrete non-economic injury stemming from the non-payment, the monetary loss Benoit and Collette allege, both in terms of the initial payment and of growing late fees, is not sufficient to point to an irreparable injury. *See Safari Club Int'l*, 47 F. Supp. 3d at 36. There is no indication that Benoit and Collette satisfy an exception to the general rule against finding irreparable injury for strictly monetary loss. Any late fees assessed by The Auburn School as a result of nonpayment could potentially be recovered against the District as part of a claim for

13

enforcement of the HOD. And Benoit and Collette have not provided any evidence to suggest that they are so poor the economic injury would rise to the level of irreparable harm. *See, e.g.*, *Lee*, 160 F. Supp. 2d at 32 (finding termination to constitute irreparable harm when plaintiffs provided evidence that they would face eviction or difficulty feeding themselves and their dependents without the salary employment provided). If Benoit and Collette add a claim for enforcement of the HOD to their complaint, they are free to file a renewed request for an injunction that details how this economic injury would cause irreparable harm, or provides information concerning renewed threats by The Auburn School to disenroll E.B., but on the current record the Court finds that they have not alleged an injury on which preliminary injunctive relief can be granted.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs' motion for a preliminary injunction is **DENIED**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: October 24, 2018                                          RUDOLPH CONTRERAS
                                                                                                     United States District Judge