# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CAMILLE COLLETTE, *et al.*,      :

       : 

     Plaintiffs,      :      Civil Action No.:    18-1104 (RC)

       :

     v.      :      Re Document No.:    31, 37, 39, 43

       :

DISTRICT OF COLUMBIA, *et al.*,      :

       :

     Defendants.      :

## MEMORANDUM OPINION

### GRANTING DEFENDANTS' MOTION TO STRIKE OR DISMISS; GRANTING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFFS' MOTION TO ENFORCE

## I. INTRODUCTION

Plaintiffs Camille Collette and Jacques Benoit brought this suit pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400–50, to challenge the education provided by the District of Columbia to their son, E.B, between 2012 and 2018. After partially prevailing in an administrative hearing, where the hearing officer determined that the District had failed to provide E.B. with a free and appropriate public education ("FAPE") under the IDEA in the 2016-2017 and 2017-2018 school years, Plaintiffs asked this Court to review and in substantial part reverse the Hearing Officer Determination ("HOD"). Plaintiffs brought ten claims for alleged errors in the HOD, challenging both the hearing officer's denial of a number of their claims in the administrative proceedings and the adequacy of the remedy they were granted for the District's failure to provide a FAPE to E.B. between 2016 and 2018.

Defendants the District; Muriel Bowser, Mayor of the District; and Amanda Alexander, Interim Chancellor of D.C. Public Schools ("DCPS"), have now moved to strike or dismiss the complaint in part, arguing that Plaintiffs improperly brought claims against the individual

defendants. Plaintiffs move for summary judgment on seven of their ten claims (withdrawing two), while Defendants cross-move for summary judgment on all remaining claims. And Plaintiffs have also moved for the Court to enforce the HOD as to the claims on which they prevailed at the administrative hearing, arguing that Defendants have failed to comply with their obligations pursuant to the HOD. Reviewing each motion in turn, the Court grants Defendants' motion to strike or dismiss, grants both parties summary judgment in part, and denies Plaintiffs' motion to enforce the HOD. The Court remands this case to the hearing officer for a determination of what compensatory education to award E.B. and whether a prospective education award is appropriate.

## II. BACKGROUND

### A. The Individual with Disabilities Education Act

The IDEA was enacted "to guarantee a free and appropriate public education . . . to disabled students." *Capital City Pub. Sch. v. Gambale*, 27 F. Supp. 3d 121, 124 (D.D.C. 2014). A FAPE must "emphasize[] special education and related services designed to meet the[] unique needs" of disabled students "and prepare them for further education, employment, and independent living." *Lague v. District of Columbia*, 130 F. Supp. 3d 305, 311 (D.D.C. 2015) (quoting 20 U.S.C. § 1400(d)(1)(A)). "All 'states and territories, including the District of Columbia, that receive federal education assistance must establish policies and procedures to ensure, among other things, that . . . [a] FAPE[] is available to disabled children' within their school districts." *Gambale*, 27 F. Supp. 3d at 124 (alterations in original) (quoting *Branham v. Gov't of the Dist. of Columbia*, 427 F.3d 7, 8 (D.C. Cir. 2005)). And "[a] free and appropriate public education entitles 'each child with a disability' to an 'individualized education program'

that is tailored to meet his or her unique needs." *Henry v. District of Columbia*, 750 F. Supp. 2d 94, 96 (D.D.C. 2010) (quoting 20 U.S.C. §§ 1414(d)(1)(A)–(2)(A)).

The individualized education program ("IEP") "is the primary vehicle for implementing the IDEA." *Lague*, 130 F. Supp. 3d at 311 (quoting *Joaquin v. Friendship Pub. Charter Sch.*, No. 14-01119 (RC), 2015 WL 5175885, at *1 (D.D.C. Sept. 3, 2015)). It is a written document "[p]repared at meetings between a representative of the local school district, the child's teacher, the parents or guardians, and, whenever appropriate, the disabled child," that "sets out the child's present educational performance, establishes annual and short-term objectives for improvements in that performance, and describes the specially designed instruction and services that will enable the child to meet those objectives." *Lesesne ex rel. B.F. v. District of Columbia*, 447 F.3d 828, 830 (D.C. Cir. 2006) (citations omitted).

In addition to participating in the development of their child's IEP, *see id.*, parents of disabled children are also entitled under the IDEA to receive a prior written notice ("PWN") "whenever the local educational agency . . . proposes to change the educational placement of the child," 20 U.S.C. § 1415(b)(3), a procedural requirement intended to "'provide sufficient information to protect the parents' rights under the Act' and to 'enable the parents to make an informed decision whether to challenge the DCPS's determination.'" *Middleton v. District of Columbia*, 312 F. Supp. 3d 113, 135 (D.D.C. 2018) (quoting *Jalloh v. District of Columbia*, 968 F. Supp. 2d 203, 213 (D.D.C. 2013)). If a parent "disagrees with an evaluation obtained by the public agency," the parent is entitled under the IDEA "to an independent educational evaluation at public expense." 34 C.F.R. § 300.502(b)(1). When faced with a request for an independent educational evaluation ("IEE"), the public agency must either "(i) file a due process complaint . . . to show that its evaluation is appropriate; or (ii) [e]nsure that an [IEE] is provided at public

expense, unless the agency demonstrates in a hearing . . . that the evaluation obtained by the parent did not meet agency criteria." *Id.* § 300.502(b)(2).

Finally, "[a] parent who objects to the 'identification, evaluation, or educational placement' of their child" can file an administrative complaint and is entitled to an impartial due process hearing. *Gambale*, 27 F. Supp. 3d at 124–25 (quoting 20 U.S.C. § 1415(b)(6)). Administrative decisions can in turn be challenged through judicial proceedings in U.S. District Court. *See* 20 U.S.C. §§ 1415(i). "[D]uring the pendency of any administrative or judicial proceeding regarding a due process complaint notice requesting a due process hearing . . . , the child involved in the complaint must remain in his or her current educational placement." 34 C.F.R. § 300.518. Under this so-called "stay put" provision, the child's parents can obtain an automatic injunction preventing changes to the child's educational placement "when the school system proposes . . . 'a fundamental change in, or elimination of, a basic element of the [then-current educational placement].'" *Alston v. District of Columbia*, 439 F. Supp. 2d 86, 90 (D.D.C. 2006) (alteration in original) (quoting *Lunceford v. District of Columbia Bd. of Educ.*, 745 F.2d 1577, 1582 (D.C. Cir. 1984)).

## B. E.B.'s Education Up to 2015

E.B. is a minor child and a resident of the District of Columbia. A.R. at 4. E.B. "has been medically diagnosed with impulse control disorder, episodic dyscontrol syndrome, anxiety, learning disabilities, and ASD [autism spectrum disorder]." *Id.* at 8. He has also been diagnosed with PANDAS (pediatric autoimmune neuropsychiatric disorder associated with streptococcal infections), "which is believed by some in the neurologic community to cause a neurologic reaction to associated infections," *id.* at 9, and he has been "identified . . . as a gender non-conforming (GNC) youth," which increases his difficulty in interacting with peers, *id.* at 8.

4

E.B. "is eligible for special education under the IDEA disability classification Autism Spectrum Disorder." *Id.* at 8. After he was initially evaluated and determined to have a disability in March 2012, *id.*, E.B.'s first IEP was developed on April 24, 2012, *id.* at 9. Plaintiffs did not believe the IEP to provide sufficient services for E.B., *see id.*, and, after DCPS was unable to offer any placement for E.B., *see id.* at 1388–90 (testimony of Camille Collette), they enrolled him in private school for the 2012-2013 school year, *id.* at 10. In June 2013, Plaintiffs obtained a spot for E.B. at Murch Elementary School for the next school year through the D.C. Public Schools lottery system. *Id.* at 51. E.B.'s IEP was updated on June 26, 2013. *Id.* at 10. However, Plaintiffs wanted to hold E.B. back in preschool because they believed he was not sufficiently emotionally mature to be advanced. *Id.* at 11. After Murch Elementary School ("Murch") refused to do so, Plaintiffs enrolled E.B. in private school for the 2013-2014 school year. *Id.*

At the end of the 2013-2014 school year, E.B.'s IEP was again updated. A meeting was held on June 19, 2014, at which a physician specialized in developmental and behavioral pediatrics "told the IEP team that [E.B.] needed a small classroom in a small school, which would be able to provide immediate feedback and consistency in behavior management." *Id.* The revised IEP nonetheless provided for E.B. to "receive almost all instruction in the public school general education setting," *id.*, while reducing the specialized services he would receive compared to the June 26, 2013 IEP, *compare id.* at 651 (listing special education and related services received under 2013 IEP) *with id.* at 617 (listing same services under 2014 IEP). E.B. had a difficult summer that year, *id.* at 11, and his "emotional state continued to deteriorate," *id.* at 52. Believing that his placement at Murch would create significant safety concerns for E.B., Plaintiffs withdrew him from DCPS and enrolled him at The Auburn School ("Auburn"), a

private school located in Maryland, for the 2014-2015 school year. *See id.* at 11, 52. The Auburn School offers tailored educational services in a small classroom setting, *id.* at 1212–13, and its "focus is to serve children, like [E.B.], who have social or communication challenges associated with ASD symptoms," *id.* at 32. E.B. did well while at Auburn, making educational progress in writing, reading, and mathematics. A.R. at 12, 1223.

### C. The 2015-2016 School Year

In the Spring of 2015, Plaintiffs approached DCPS about re-enrolling E.B. at Murch Elementary School. *See id.* at 12, 52. A revised IEP was not prepared in anticipation of the 2015-2016 school year. *See id.* at 23, 52. E.B. began attending Murch at the start of the school year, but the situation quickly deteriorated. *Id.* at 12, 52. E.B. had to be dragged to Murch "kicking and screaming," *id.* at 12, and "would frequently elope from the walking pattern to school," *id.* at 1423. He complained to his parents that he did not feel safe in school. *Id.* at 1424. "On one day, [E.B.] sat down in the street and refused to go to school." *Id.* at 12. After two weeks, feeling that "everybody had . . . done their best, but that . . . [E.B.] was [not] developmentally ready," *id.* at 1426, Plaintiffs decided to withdraw E.B. from Murch and to enroll him at Auburn for the rest of the 2015-2016 school year, *id.* at 12. E.B. again did well at Auburn, improving both his social thinking and communicating skills and his academic abilities. *Id.* at 13.

On September 21, 2015, after E.B. had been withdrawn from Murch and placed back at Auburn, the IEP team met again to update his IEP in anticipation of the 2016-2017 school year. *Id.* at 12, 1427. The new IEP provided that E.B. would return to Murch. *Id.* at 12. The specialized services to be provided E.B. were again adjusted, with the IEP team agreeing that the IEP was appropriate for E.B. at the time. *See id.* at 13, 1606, 1689–90.

### D. The 2016-2017 School Year

At the beginning of the 2016-2017 school year, Plaintiffs were committed to having E.B. try to attend Murch again. *Id.* at 13. E.B. started the school year at Murch, and on September 19, 2016, his IEP team met to update his IEP. *Id.* at 13–14, 575. The IEP was revised again on October 26, 2016. *Id.* at 14, 225. On both occasions, Plaintiffs participated in the IEP meeting and approved the IEPs. *Id.* at 14. Later in the school year, and after several months of back and forth, DCPS granted Plaintiffs' request to have a neuropsychological IEE conducted for E.B. on February 13, 2017. *Id.* at 795–804. DCPS's approval letter only authorized the payment of up to $2406.72 for the IEE, which DCPS contended was the market rate for such an evaluation. *Id.* at 795. Plaintiffs had the IEE conducted in March 2017 by Dr. Daisy M. Pascualvaca, a neuropsychologist, for a total cost of $4,550. *Id.* at 791. DCPS subsequently refused to pay the difference between the amount stated in the IEE authorization letter and the amount charged by Dr. Pascualvaca. *Id.* at 793.

E.B. had a difficult year at Murch. He did well from an academic perspective, performing "at or above grade level in Reading and Math" and "close to grade level" in writing. *Id.* at 15. However, it once again "was a struggle to get [E.B.] to school," with both the school staff and Plaintiffs working together to encourage E.B. to attend. *Id.* at 14. Murch allowed E.B. to arrive late, and he "missed hours of class time" as a result. *Id.* at 15. And in the Spring of 2017, several serious incidents occurred that ultimately led to E.B. ending the school year early. In March 2017, after E.B. "reacted badly to changes in school routine caused by a snow day," he was "'corralled' in a washroom by staff" until he calmed down. *Id.* A month later, E.B. cursed and threatened Murch's social worker after refusing to go to his classroom. *Id.* And in May 2017, E.B. was alleged to have threatened another student in the school cafeteria and threatened

to self-harm after another incident.  *Id.*  E.B. was withdrawn from Murch for the rest of the school year after the cafeteria incident.  *Id.* at 16.

### E.  The 2017-2018 School Year

In anticipation of the 2017-2018 school year, an eligibility meeting was convened on May 8, 2017, where E.B.'s eligibility for special education as a student with ASD was again confirmed.  *Id.*  Plaintiffs and DCPS agreed to hold another meeting as soon as the results of the IEE approved in February 2017 would be released to the school.  *Id.* at 152.  On June 5, 2017, DCPS was provided with reports of an occupational therapy evaluation of E.B. and of an autism and gender development consultation conducted by a neuropsychologist.  *Id.* at 16–17.  At some point in June, DCPS was also provided with Dr. Pascualvaca's IEE report, which, *inter alia*, recommended that E.B. "attend a full-time special education school, designed specifically to meet the needs of students with social and communication challenges."  *Id.* at 17.

One June 14, 2017, the IEP team met to review the IEE report and to discuss updating the IEP in anticipation of the next school year.  *Id.* at 18.  The report was discussed by the team, but was not incorporated into the IEP, with the school psychologist "stat[ing] that the IEE evaluation was incomplete because it lacked a classroom observation."  *Id.*  The IEP team also declined to follow Dr. Pascualvaca's recommendation to have E.B. placed in a smaller, full-time special education school, and his IEP was not amended.  *See id.* at 33.  And the IEP team did not discuss the two reports received by DCPS on June 5, 2017.  *Id.* at 35–36.  On July 2, 2017, Plaintiffs informed DCPS that they disagreed with the decision not to revise the IEP in light of the three reports, and that they would again be placing E.B. at Auburn for the 2017-2018 school year.  *Id.* at 18.  DCPS failed to hold any further IEP meeting for E.B.  *Id.* at 18–19.

### F. Procedural History

Plaintiffs filed a due process complaint with the District's Office of the State Superintendent of Education ("OSSE") on October 13, 2017. *Id.* at 4, 46. Plaintiffs identified twelve separate issues in their due process complaint, relating to DCPS's provision of educational services to E.B. between 2012 and 2018. *Id.* at 55–56. They asked for, *inter alia*, reimbursement for placing E.B. at Auburn for three years, prospective placement at Auburn in the future, and an order for DCPS to provide compensatory education services to E.B. A due process hearing was held over four days in January and February 2018, at which Plaintiffs, several medical professionals, and school officials testified. *Id.* at 4. Plaintiffs dropped two of their claims at the conclusion of the hearing. *Id.* at 6 n.2. And on February 18, 2018, the hearing officer issued a HOD resolving Plaintiffs' ten remaining claims: that DCPS had denied E.B. a FAPE by developing inappropriate IEPs in April 2012, June 2013, June 2014, September 2015, and the fall of 2016, and failing to offer an appropriate educational placement for E.B. in each corresponding school year; failing to revise E.B.'s June 2014 IEP within a year; failing to revise his October 2016 IEP by the start of the 2017-2018 school year; failing to conduct IEP meetings to review various medical evaluations conducted by Plaintiffs and provided to DCPS; failing to conduct a comprehensive re-evaluation of E.B. in the Spring of 2017; failing to fully pay for Dr. Pascualvaca's IEE; and failing to issue PWNs informing Plaintiffs of E.B.'s placement every school year between 2012 and 2018. *Id.* at 5–6.

In the HOD, the hearing officer first denied as barred by the statute of limitations all claims resting on alleged violations occurring more than two years prior to the filing of the administrative complaint on October 13, 2017. *See id.* at 20–25. Time-barred claims included Plaintiffs' claims relating to E.B.'s IEPs for April 2012, June 2013, June 2014, and September

2015, and to his educational placement for each associated school year; the failure to revise

E.B.'s June 2014 IEP within a year; and any PWNs that allegedly should have been issued in

school years 2012-2013 through 2014-2015. *See id.* The hearing officer next reviewed the Fall

2016 IEPs, and concluded that they were inappropriate and denied E.B. a FAPE. *Id.* at 26–30.

He similarly concluded that DCPS's failure to revise E.B.'s IEP by the start of the 2017-2018

school year denied E.B. a FAPE. *Id.* at 30–33. However, the hearing officer denied Plaintiffs

relief on their claims relating to DCPS's failure to review medical evaluations, to re-evaluate

E.B. in the Spring of 2017, and to issue PWNs between 2015 and 2018. *Id.* at 33–37. The

hearing officer found that the failure to review medical evaluations, re-evaluate E.B., and to send

any required PWNs for the 2015-2016 school year were procedural violations that did not create

the prejudice required to find a denial of a FAPE. *See id.* And he found that whether the failure

to issue PWNs between 2016 and 2018 resulted in the denial of a FAPE was "irrelevant" because

he had already found the denial of a FAPE for those years. *Id.* at 37 (quoting *Adams v. District*

*of Columbia*, 285 F. Supp. 3d 381, 394 (D.D.C. 2018)). Finally, the hearing officer denied

Plaintiffs' claim relating to payment for the IEE, finding both 1) that Plaintiffs had not shown

they were unable to obtain the evaluation at DCPS's approved cost, and 2) that the IEE was

inappropriate because it lacked a classroom evaluation. *Id.* at 34.

Having found the denial of a FAPE to E.B. for the 2016-2017 and 2017-2018 school

years, the hearing officer moved on to what relief to award Plaintiffs. As a remedy for the failure

to have a proper IEP in place by the start of the 2017-2018 school year, the hearing officer

awarded Plaintiffs the cost of placing E.B. at Auburn between the start of the school year and the

date of the due process hearing. *Id.* at 33. The hearing officer next recognized that Plaintiffs

were seeking both compensatory education for DCPS's denial of a FAPE for the 2016-2017

school year, and a prospective placement at Auburn in the future. *See id.* at 38–39. But rather than addressing both separately, the hearing officer noted that making a determination as to either would be difficult and, "[a]s an alternative, . . . grant[ed], as compensatory education, the parents' request that DCPS be ordered to fund [E.B.]'s continued placement at [Auburn] for the remainder of the 2017-2018 school year." *Id.* at 39. Altogether, the HOD thus provided for DCPS to fully cover the costs of E.B.'s attendance to Auburn for the 2017-2018 school year. *See id.* at 40.

Plaintiffs brought a lawsuit challenging the HOD on May 9, 2018. *See* Compl., ECF No. 1. On August 27, 2018, the Court granted Plaintiffs a "stay put" injunction pursuant to the IDEA, obligating Defendants to fund E.B.'s placement at Auburn for the pendency of Plaintiffs' appeal of the HOD. Order Granting Pls.' Mot. Prelim. Stay Put Inj., ECF No. 12. And on November 18, 2018, Plaintiffs filed the operative amended complaint. *See* Am. Compl., ECF No. 27. Plaintiffs bring ten claims in the amended complaint. *See generally id.* Nine are related to the HOD: Plaintiffs allege that the hearing officer erred in finding that their challenges to 1) the June 2014 IEP and 2014-2015 placement, 2) the failure to timely review the June 2014 IEP, and 3) the September 2015 IEP and 2015-2016 placement were barred by the statute of limitations. *See id.* ¶¶ 57–62. Plaintiffs further allege that the hearing officer erred by 4) failing to award relief based on DCPS's failure to provide PWNs; 5) addressing DCPS's alleged failure to provide a functional behavioral assessment ("FBA") for E.B., a claim withdrawn during the due process hearing; declining to award relief based on DCPS's 6) failure to accept Dr. Pascualvaca's IEE and 7) failure to consider Plaintiffs' other medical evaluations; 8) failing to award Plaintiffs the cost of Dr. Pascualvaca's IEE; and 9) failing to properly evaluate Plaintiffs' request for prospective and compensatory education. Am. Compl. ¶¶ 57–74. Finally, Plaintiffs

claim 10) that Defendants have failed to comply with the portion of the HOD ordering them to pay the costs of E.B.'s attendance at Auburn for 2017-2018. *Id.* ¶¶ 75–77.

On December 12, 2018, Defendants moved to strike or dismiss the claims against the individual Defendants. *See* Defs.' Mot. Strike, ECF No. 31. Plaintiffs filed their opposition on December 22, 2018. *See* Pls.' Opp'n Mot. Strike, ECF No. 36. On December 28, 2018, Plaintiffs moved for summary judgment on all claims except the two claims relating to the June 2014 IEP, which they withdrew, and the claim relating to Defendants' failure to comply with the HOD. *See* Pls.' Mem. Supp. Mot. Summ. J. ("Pls.' MSJ Mem. Supp.") 11–24, ECF No. 37-2. Defendants cross-moved for summary judgment on all remaining counts on January 25, 2019. *See* Defs.' Mem. Supp. Cross-Mot. Summ. J. ("Defs.' MSJ Mem. Supp."), ECF No. 39. Plaintiffs filed their reply on February 22, 2019, *see* Pls.' Reply Supp. Summ. J. ("Pls.' MSJ Reply"), ECF No. 41, and filed a motion to compel compliance with the HOD on February 26, 2019, *see* Pls.' Mem. Supp. Mot. Compel, ECF No. 43-2. Defendants filed their reply in further support of summary judgment on March 8, 2019. *See* Defs.' Reply Supp. Summ. J., ECF No. 44. Defendants filed their opposition to the motion to compel on April 16, 2019, *see* Defs.' Opp'n Mot. Compel, ECF No. 47, and Plaintiffs filed their reply on May 6, 2019, *see* Pls.' Reply Supp. Mot. Compel, ECF No. 48.

### III. LEGAL STANDARD

#### A. Motion to Dismiss for Failure to State a Claim

To prevail on a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a plaintiff need only provide a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), that "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Erickson v. Pardus*, 551 U.S. 89, 93

(2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted)). A motion to dismiss under Rule 12(b)(6) does not test a plaintiff's ultimate likelihood of success on the merits; rather, it tests whether a plaintiff has properly stated a claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). A court considering such a motion presumes that the complaint's factual allegations are true and construes them liberally in the plaintiff's favor. *See, e.g.*, *United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 131, 135 (D.D.C. 2000).

Nevertheless, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555–56 (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are therefore insufficient to withstand a motion to dismiss. *Iqbal*, 556 U.S. at 678. A court need not accept a plaintiff's legal conclusions as true, *see id.*, nor must a court presume the veracity of legal conclusions that are couched as factual allegations. *See Twombly*, 550 U.S. at 555.

### B. Motion for Summary Judgment

A court may grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one capable of affecting the substantive outcome of the litigation. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is

"genuine" if there is enough evidence for a reasonable jury to return a verdict for the non-movant. *See Scott v. Harris*, 550 U.S. 372, 380 (2007).

The principal purpose of summary judgment is to streamline litigation by disposing of factually unsupported claims or defenses and determining whether there is a genuine need for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The movant bears the initial burden of identifying portions of the record that demonstrate the absence of any genuine issue of material fact. *See* Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 323. In response, the non-movant must point to specific facts in the record that reveal a genuine issue that is suitable for trial. *See Celotex*, 477 U.S. at 324. In considering a motion for summary judgment, a court must "eschew making credibility determinations or weighing the evidence[,]" *Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007), and all underlying facts and inferences must be analyzed in the light most favorable to the non-movant, *see Anderson*, 477 U.S. at 255. Nevertheless, conclusory assertions offered without any evidentiary support do not establish a genuine issue for trial. *See Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).

## C. Summary Judgment in IDEA Administrative Review

"Although motions for review of a HOD are called motions for summary judgment, the court does not follow 'a true summary judgment procedure.'" *Middleton*, 312 F. Supp. 3d at 128 (quoting *L.R.L. ex rel. Lomax v. District of Columbia*, 896 F. Supp. 2d 69, 73 (D.D.C. 2012)). The district court instead "essentially conduct[s] a bench trial based on a stipulated record." *G.G. ex rel. Gersten v. District of Columbia*, 924 F. Supp. 2d 273, 277 (D.D.C. 2013) (alteration in original) (quoting *L.R.L.*, 896 F. Supp. 2d at 73). When, as here, "no new evidence has been submitted . . . , the Court will treat the parties' cross-motions for summary judgment as motions

for judgment based on the administrative record." *Id.* (citing *S.B. v. District of Columbia*, 783 F. Supp. 2d 44, 50 (D.D.C. 2011)).

A party challenging the administrative determination of a HOD "take[s] on the burden of persuading the court that the hearing officer was wrong." *Middleton*, 312 F. Supp. 3d at 129 (alteration in original) (quoting *Kerkam v. McKenzie* ("*Kerkam I*"), 862 F.2d 884, 887 (D.C. Cir. 1988)). The district court must base its decision on the preponderance of the evidence, and the D.C. Circuit has accordingly "held that 'less deference than is conventional in administrative proceedings' is appropriate." *N.W. v. District of Columbia*, 253 F. Supp. 3d 5, 12 (D.D.C. 2017) (quoting *Reid ex rel. Reid v. District of Columbia*, 401 F.3d 516, 521 (D.C. Cir. 2005)). However, "this standard does not authorize unfettered de novo review." *Brown v. District of Columbia*, 179 F. Supp. 3d 15, 23 (D.D.C. 2016) (citation omitted). The reviewing court should still "give 'due weight' to the decision of the hearing officer and should afford some deference to the expertise of the hearing officer and the school officials." *D.K. v. District of Columbia*, 983 F. Supp. 2d 138, 144 (D.D.C. 2013); *see Bd. of Educ. Of Hendrick Hudson Cent. Sch. Dist., Westchester Cty. v. Rowley*, 458 U.S. 176, 206 (1982) ("[T]he provision that a reviewing court base its decision on the 'preponderance of the evidence' is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review."). And "[f]actual findings from the administrative proceedings are to be considered prima facie correct." *Brown*, 179 F. Supp. 3d at 23 (alteration in original) (quoting *Roark ex rel. Roark v. District of Columbia*, 460 F. Supp. 2d 32, 38 (D.D.C. 2006)).

## IV. ANALYSIS

Defendants have moved to dismiss the individually named defendants from this suit, both parties have moved for summary judgment, and Plaintiffs have moved to compel Defendants'

compliance with those portions of the HOD on which they did prevail. As an initial matter, although Plaintiffs claim the motion to compel is "something separate and apart from the[ir] . . . Motion for Summary Judgment," Pls.' MSJ Reply 7, they are essentially asking the Court to rule in their favor on that claim by compelling Defendants to issue the relief they sought in the amended complaint, *see* Am. Compl. ¶¶ 75–78; Pls.' Mem. Supp. Mot. Compel 1. The Court will therefore deny the motion to compel and instead address it as a motion for summary judgment on Plaintiffs' claim relating to compliance with the HOD.

The Court first addresses Defendants' motion to dismiss, before reviewing the parties' cross-motions for summary judgment. Because Plaintiffs' claims against the individual defendants are functionally identical to their claims against the District, the Court grants the motion to dismiss. Next, the Court grants Defendants' motion for summary judgment on claims relating to the September 2015 IEP and 2015-2016 placement, failure to provide PWNs, FBA, and failure to consider Dr. Pascualvaca's IEE or other medical examinations. The Court grants Plaintiffs' motion for summary judgment on their claims relating to the payment for Dr. Pascualvaca's IEE and the remedy awarded by the hearing officer. Finally, the Court denies both parties summary judgment on Plaintiffs' claim that Defendants failed to comply with the HOD. Finding that the hearing officer is best placed to make a determination as to remedy, the Court remands this matter for a determination as to compensatory education and prospective placement at Auburn.

### A. The Court Grants the Motion to Dismiss Claims Against Individual Defendants

First, the Court considers Defendants' motion to strike or dismiss claims against Bowser and Alexander. Defendants argue that because a suit for damages against government officials is equivalent to a suit for damages against the government entity itself, Plaintiffs' claims against

Bowser and Alexander are equivalent to their claims against the District and therefore unnecessary. *See* Defs.' Mem. Supp. Mot. Strike 3, ECF No. 31 (quoting *Atchinson v. District of Columbia*, 73 F.3d 418, 424 (D.C. Cir. 1996)). Plaintiffs oppose the motion, arguing that nothing prevents them from naming the two individuals as defendants on their claim pursuant to 42 U.S.C. § 1983. Pls.' Opp'n Mot. Strike 4–5. The Court agrees with Defendants, and accordingly grants their motion to dismiss.

The Supreme Court has explained that "[o]fficial-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. N.Y. City Dep't of Social Servs.*, 436 U.S. 658, 690 n.55 (1978)). In the context of suits under § 1983, the D.C. Circuit has thus explained that "[a] section 1983 suit for damages against municipal officials in their official capacities is . . . equivalent to a suit against the municipality itself." *Atchinson*, 73 F.3d at 424 (citing *Graham*, 473 U.S. at 165–66). And for the same reason, "courts routinely dismiss the named official in IDEA suits also brought against the [local government] entity." *Gill v. District of Columbia*, No. 09-1608, 2009 WL 10700953, at *1 (D.D.C. Oct. 14, 2009) (citing *Blunt v. Lower Merion Sch. Dist.*, 559 F. Supp. 2d 548, 567–68 (E.D. Pa. 2008); *C.N. v. Willmar Pub. Sch.*, No. 07-4774, 2008 WL 3896205, at *3 (D. Minn. Aug. 19, 2008); and *Hinson v. Merritt Educ. Ctr.*, 521 F. Supp. 2d 22, 34 (D.D.C. 2007)).

Here, Defendants argue that the claims against Bowser and Alexander should be dismissed because they are official capacity claims functionally equivalent to the claims against the District. Defs.' Mem. Supp. Mot. Strike 3. Plaintiffs acknowledge that the individual claims are brought in Bowser and Alexander's official capacity only, *see* Pls.' Opp'n Mot. Strike 2; *see also* Am. Compl. ¶¶ 4–5. But, without addressing any IDEA claims against both individuals,

Plaintiffs contend that the amended complaint properly brings a § 1983 claim against Bowser and Alexander for the District's failure to comply with the HOD, which deprived them of their rights under the IDEA. *See* Pls.' Opp'n Mot. Strike 3–4. Plaintiffs further contend that, as to that claim, "[w]hile perhaps naming individuals in the[ir] official capacity may not be a condition precedent to moving a lawsuit forward, nothing in [*Graham*] prohibits the naming of individuals in their official capacity." *Id.* at 5.

The Court agrees with Defendants here. As an initial matter, Plaintiffs do not appear to dispute that naming Bowser and Alexander as defendants on the IDEA claims is unwarranted, and the Court accordingly grants the motion to dismiss as to those claims, to eliminate the redundancy of having both the District and its individual officials defending the same claim. Next, while Plaintiffs may be technically correct that *Graham* does not explicitly prohibit naming as defendants a local entity and its officers in their official capacity, courts have routinely dismissed claims against individual defendants under such circumstances. This is because "[i]n eliminating the redundant claims against individually named persons, the court is merely simplifying the litigation in a way that does not cause any prejudice to plaintiffs." *Gill*, 2019 WL 10700953 at *2 (quoting *Blunt*, 559 F. Supp. 2d at 568). Here, Plaintiffs bring a § 1983 claim for the denial of their civil rights "as a result of Defendant[s'] refusal to comply with the [HOD], Am. Compl. ¶ 78, against both the District and two of its officers in their official capacity. Seeing no reason to litigate both claims when they essentially function as one, the Court grants the motion to dismiss as to the § 1983 claim against Bowser and Alexander, and therefore grants the motion to dismiss in its entirety.

## B. The Court Grants Both Parties Summary Judgment in Part

Next, the Court addresses the parties' cross-motions for summary judgment. Plaintiffs withdraw the first two claims in the amended complaint, Pls.' MSJ Mem. Supp. 11, and move for summary judgment on all other claims, *see id.* at 11–24. The District moves for summary judgment on all remaining claims. Defs.' MSJ Mem. Supp. 1–3. The Court addresses the seven remaining claims in turn. It grants summary judgment to the District on the claims relating to the September 21, 2015 IEP and 2015-2016 school placement for E.B., the prior written notices, and the failure to accept Dr. Pascualvaca's IEE of E.B. or to review other medical examinations provided by Plaintiffs.[1] The Court grants Plaintiffs summary judgment on their claims relating to the payment for Dr. Pascualvaca's IEE, and that the hearing officer improperly awarded relief for the denials of a FAPE in 2016-2017 and 2017-2018. Finally, the Court denies both parties summary judgment on Plaintiffs' claim relating to the District's failure to comply with the HOD.

### 1. The Hearing Officer Correctly Denied as Time-Barred Plaintiffs' Claims Relating to the September 2015 IEP and 2015-2016 Placement

The Court first addresses Plaintiffs' third claim, that the hearing officer incorrectly found their claim as to the appropriateness of the September 21, 2015 IEP and 2015-2016 school placement to be barred by the statute of limitations. *See* Am. Compl. ¶¶ 61–62. The parties appear to agree that the applicable statute of limitations is two years from the date Plaintiffs

---

[1] The Court also grants summary judgment to the District on Plaintiffs' claim that the hearing officer improperly ruled on whether DCPS denied E.B. a FAPE by failing to conduct an FBA after they withdrew the issue during the due process hearing. The HOD certainly lacks any justification for why the hearing officer decided to rule on the issue after acknowledging that Plaintiffs withdrew it. But Plaintiffs having withdrawn their claim at the due process hearing, it is unclear to the Court what relief it can award them here. *Cf. Green v. District of Columbia*, No. 05-550 (CKK), 2006 WL 1193866, at *9 (D.D.C. May 2, 2006) (denying plaintiff's claims as to errors in HOD as "irrelevant and moot" when "a ruling by the Court would have no practical effect").

knew or should have known about any alleged IDEA violation.[2] *See* Pls.' MSJ Mem. Supp. 11–12, Defs.' MSJ Mem. Supp. 6. And Plaintiffs filed their due process complaint on October 13, 2017, A.R. at 46, more than two years after the IEP was prepared and Plaintiffs decided to withdraw E.B. from Murch in September 2015. Plaintiffs nonetheless argue that the hearing officer incorrectly found their claim relating to the September 21, 2015 IEP and 2015-2016 school placement to be time-barred, because they can still challenge the IEP and E.B.'s placement for the period between October 13, 2015 and the end of the 2015-2016 school year. Pls.' MSJ Mem. Supp. 12. The Court disagrees.

Pursuant to 20 U.S.C. § 1415(f)(3)(C), a parent can "request an impartial due process hearing within two years of the date the parent . . . knew or should have known about the alleged action that forms the basis of the complaint." *Id.* As the hearing officer recognized, this renders a claim timely "so long as the complaint is filed within two years of the known or should have known (KOSHK) date." A.R. at 21. This statute of limitations requires an administrative officer to conduct a "'fine-grained analysis' . . . to determine discovery dates in a complaint alleging . . . many different IDEA violations." *Damarcus S. v. District of Columbia*, 190 F. Supp. 3d 35, 45 (D.D.C. 2016) (citing *K.H. v. N.Y. City Dep't of Educ.*, No. 12-cv-1680 (ARR)(MDG), 2014 WL 3866430, at *16 (E.D.N.Y. Aug. 6, 2014).

In the HOD, after recognizing the statute of limitations set by § 1415(f)(3)(C), *see* A.R. at 21, the hearing officer determined that Plaintiffs knew or should have known of any claims relating to the September 21, 2015 IEP and placement for the 2015-2016 school year by the time

---

[2] The District takes offense with the Third Circuit's decision in *G.L. v. Ligonier Valley Sch. Dist. Auth.*, 802 F.3d 601 (3d Cir. 2015), which resolved a potential inconsistency between two statute of limitations provisions in the IDEA, *see id.* at 605. However, as the District recognizes, *G.L.* is not at issue here, and the Court will not address it. *See* Defs.' MSJ Mem. Supp. 6 n.1.

of the September 21 IEP meeting, *see id.* at 24.  The hearing officer explained that by the date of

the meeting, E.B.'s parents had already pulled him out of Murch for the rest of the school year,

and accordingly knew, or should have known, that a proposed placement at Murch for 2015-

2016 and the terms of the IEP providing for E.B.'s return at Murch were inappropriate.  *See id.*

Because September 21, 2015 is over two years prior to the filing of the administrative complaint

on October 13, 2017, the hearing officer thus denied those claims as time-barred.  *Id.*

   Plaintiffs contend that the decision was in error because "[s]uch a finding deprives

Plaintiffs of the right to challenge the IEP and placement for the entire school year."  Pls.' MSJ

Mem. Supp. 11.  According to Plaintiffs, "[a]t a minimum, the issue of the inappropriateness of

[E.B.'s] IEP and placement from October 13, 2015 through the end of the 2015-2016 school year

fell within the 2 year statute of limitations."  *Id.* at 11–12.  And in their reply, Plaintiffs also raise

the argument that they "were not aware on September 21, 20[1]5 that the IEP was

inappropriate."[3]  Pls.' MSJ Reply 2.  The Court cannot agree.  As to the adequateness of the IEP,

the Court concurs with the hearing officer that, having "already decided that [E.B.] would not

return that year" to Murch because they did not believe E.B. was developmentally ready to

attend Murch, *see* A.R. at 24, 1426, Plaintiffs at the very least should have known at the time of

the IEP meeting that an IEP providing for his placement at Murch for the school year without

addressing their concerns was not appropriate.  And as to the period of time between October 13,

2015 and the end of the 2015-2016 school year, Plaintiffs misunderstand the functioning of the

statute of limitations.  While it may be true that the injury caused by DCPS's alleged failure to

---

[3] While the Court addresses the argument and finds it without merit, it notes that courts
generally "decline to consider arguments raised for the first time in reply."  *Singletary v. District
of Columbia*, 685 F. Supp. 2d 81, 92 (D.D.C. 2010) (citing *Juergens v. Urban Title Servs.*, 652 F.
Supp. 2d 40, 50 n.8 (D.D.C. 2009)).

provide an appropriate IEP and placement would be continuing past October 13, 2015 and for the rest of the school year, Plaintiffs knew, or should have known, of the act causing that alleged injury before October 13, 2015. Plaintiffs do not point to a series of repeated acts in violation of the IDEA over the course of the 2015-2016 school year, which might reach beyond October 13, 2015; rather, they point to a continuing *injury* as a result of specific acts they knew or should have known were allegedly unlawful prior to October 13, 2015. The statute of limitations runs from that discovery date, and the Court therefore concludes that the hearing officer properly found Plaintiffs' claims to be time-barred. The Court grants summary judgment to the District on Plaintiffs' third claim.

### 2. The Hearing Officer Correctly Denied Plaintiffs' Claim Relating to DCPS's Failure to Issue PWNs

The Court next reviews claim four, Plaintiffs' claim that the hearing officer improperly found any claim relating to DCPS's failure to issue PWNs prior to October 13, 2015 to be time-barred, and that the failure to provide appropriate PWNs otherwise did not constitute a substantive violation of the IDEA. *See* Am. Compl. ¶¶ 63–64; Pls.' MSJ Mem. Supp. 12–15. Plaintiffs contend that 1) the PWNs DCPS actually issued them between 2012 and 2018 were deficient, 2) the hearing officer incorrectly found that Plaintiffs should have known about the requirement for DCPS to issue PWNs prior to changes in E.B.'s placement, and 3) the hearing officer incorrectly found any procedural violation caused by the failure to send a PWN prior to E.B.'s 2015-2016 placement not to deny E.B. a FAPE. *See* Pls.' MSJ Mem. Supp. 12–15. The Court disagrees as to each.

As an initial matter, Plaintiffs appear to be making the argument in this case not just that DPCS failed to issue PWNs, but also that the PWNs DCPS did issue were deficient and impeded E.B.'s right to a FAPE. *See* Pls.' MSJ Mem. Supp. 13. But Plaintiffs did not raise this issue in

their due process complaint, which focused solely on whether DCPS "denied [E.B.] a FAPE by failing to issue a [PWN]" informing Plaintiffs of E.B.'s placement every year between 2012 and 2018. A.R. at 56. Neither did Plaintiffs make any argument as to the sufficiency of the PWNs they received over the years at the due process hearing. *See, e.g.*, A.R. at 1820 (noting, in Plaintiffs' closing statement, that "[i]ssue number 11 . . . talks about failing to issue prior notices" when "[t]here are no PWNs in the record about placement"). "The law is clear that the scope of an IDEA hearing extends only to those issues raised in the Due Process Complaint, and that matters not presented to the Hearing Officer are not administratively exhausted for the purposes of district-court review." *Adams*, 285 F. Supp. 3d at 394 (citations omitted). Because this issue was not raised in the due process proceedings, Plaintiffs cannot raise it now.

Next, the Court agrees with the hearing officer's conclusion that any claim relating to the failure to provide PWNs prior to October 13, 2015 is time-barred. The hearing officer pointed out that Plaintiffs received numerous PWNs over the years, and concluded that they knew or should have known any placement-related PWN was not received at the time of each placement. A.R. at 25. As a result, the hearing officer concluded that to the extent any required PWNs were not sent between the 2012-2013 and 2015-2016 school year, the statute of limitations on claims relating to those PWNs began accruing at the time of DCPS's failure to send them and the claims were time-barred. Plaintiffs argue that the IDEA does not place the burden on the parent to "figure out the rules regarding [PWNs] under the IDEA and then make sure that the school system is in compliance." Pls.' MSJ Mem. Supp. 14. While this may be true, Plaintiffs received a number of PWNs over the year, all of which noted the IDEA's requirement that DCPS provide a PWN prior to the initiation or change in E.B.'s educational placement. *See, e.g.*, A.R. at 610, 633, 634, 635. The Court therefore agrees with the hearing officer that Plaintiffs at the very least

should have known about the requirement for DCPS to issue PWNs, and about its failure to do so, prior to E.B.'s placements between the 2012-2013 and the 2015-2016 school years.

Finally, the Court again concurs with the hearing officer's determination that DCPS's failure to issue a PWN informing Plaintiffs of E.B.'s placement for the 2015-2016 school year did not deny E.B. a FAPE. As an initial matter, it is unclear to the Court why the hearing officer reached the issue: because a PWN must be sent prior to E.B.'s placement for the year, it would have had to be sent prior to October 13, 2015, and Plaintiffs' claim as to that PWN is time-barred. *See supra*. But in any event, the Court agrees that any procedural deficiency caused by the failure to send the PWN did not deny E.B. a FAPE. The failure to issue a PWN is a procedural violation of the IDEA. *See, e.g.*, *Middleton*, 312 F. Supp. 3d at 136. And an IDEA claim premised on a procedural violation is viable "only if th[at] violation[] affected the student's substantive rights," *id.* (quoting *Lesesne*, 447 F.3d at 834), which requires showing that the procedural violation "(i) [i]mpeded the child's right to a FAPE; (ii) significantly impeded the parent's opportunity to participate in the decisionmaking process regarding the provision of a FAPE to the parent's child; or (iii) caused the deprivation of the educational benefit," *id.* (quoting 34 C.F.R. § 300.513).

Here, Plaintiffs did not show at the due process proceedings that the failure to issue a PWN in anticipation of E.B.'s placement for the 2015-2016 school year affected E.B.'s substantive rights. The HOD itself provides little explanation on that issue, devoting two sentences to summarily conclude that "Petitioners have not established that [E.B.] was denied a FAPE." A.R. at 35. In the absence of "reasoned and specific findings," it "deserves little deference." *Reid*, 401 F.3d at 521 (quoting *Kerkam v. Superintendent, D.C. Pub. Schs.* ("*Kerkam II*"), 931 F.2d 84, 87 (D.C. Cir. 1991)). But it is nonetheless correct. There is no

indication in the record that the failure to provide a PWN denied E.B.'s right to a FAPE. And

Plaintiffs themselves approached DCPS to have E.B. placed at Murch in 2015-2016, working

with DCPS to make the transition as smooth as possible during the summer. *See* A.R. at 1419

(testimony of Camille Collette). The Court therefore cannot find that the failure to provide a

notice, as opposed to DCPS's failure to revise E.B.'s IEP, significantly impeded Plaintiffs'

ability to participate in the decisionmaking process or otherwise deprived E.B. of a FAPE. The

Court therefore grants Defendants summary judgment as to claim four.[4]

### 3. Claims Relating to DCPS's Failure to Accept Dr. Pascualvaca's IEE and to Review E.B.'s Medical Evaluations Are Moot

The Court reviews together claims six and seven. Plaintiffs argue that both DCPS's

refusal to accept Dr. Pascualvaca's IEE or to otherwise conduct its own evaluation of E.B., and

its failure to review reports by other medical professionals, denied E.B. his right to a FAPE.

Pls.' MSJ Mem. Supp. 19. The District retorts that it appropriately responded to all medical

examinations provided by Plaintiffs, and thus that it is entitled to summary judgment. Defs.'

MSJ Mem. Supp. 11–13. The Court agrees that summary judgment to the District is warranted,

but for an entirely different reason. The District having already been found to have denied E.B. a

FAPE in 2017-2018, and the HOD having otherwise provided a remedy for the procedural

violations they alleged, Plaintiffs' claims are moot.

"Pursuant to Article III, section 2 of the Constitution, federal courts are limited to

deciding 'actual, ongoing controversies.'" *Green v. District of Columbia*, No. 05-550 (CKK),

---

[4] By its own terms, claim four does not appear to challenge the hearing officer's decision not to reach the issue of whether DCPS failed to issue required PWNs for 2016-2017 and 2017-2018, or whether such a failure would deny E.B. a FAPE. *See* A.R. at 37. Even if it did, the Court would nonetheless find any procedural violation not to have caused a substantive violation of the IDEA, given Plaintiffs' significant involvement in the decisionmaking process regarding the provision of a FAPE to E.B. between 2016 and 2018.

2006 WL 1193866, at *9 (D.D.C. May 2, 2006) (quoting *21st Century Telesis Joint Venture v. Fed. Comm'cns Comm'n*, 318 F.3d 192, 198 (D.C. Cir. 2003)). This case or controversy requirement "prohibits courts from issuing advisory opinions or decisions based on . . . abstract issues." *Id.* (citing *Flast v. Cohen*, 392 U.S. 83, 96 (1968)). And "where . . . challenged conduct ceases or is alleviated, and 'there is no reasonable expectation that the wrong will be repeated,'" *id.* (quoting *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000)), "any opinion as to the legality of the challenged action would be advisory," *Pap's A.M.*, 529 U.S. at 287.

Applied in the IDEA context, several reviewing courts have explained that "what 'is critical' is not the number of ways in which" the denial of a FAPE is found, "but simply 'the fact that the Hearing Officer found [the denial in the first place].'" *Adams*, 285 F. Supp. 3d at 392–93 (quoting *Green*, 2006 WL 1193866 at *9). Put another way, "[w]hether the Hearing Officer based such a finding on one, or two, or three alleged violations is irrelevant—the result would be the same." *Id.* at 391 (alteration in original) (quoting *Green*, 2006 WL 1193866 at *9). Courts have thus denied as moot plaintiffs' attempts to appeal HODs that found the denial of a FAPE for only some of their claims, and seeking to have the court issue an opinion merely holding that the hearing officer did not find enough denials of a FAPE during the same time period. *See, e.g.*, *Adams*, 285 F. Supp. 3d at 392–93; *Green*, 2006 WL 1193866 at *9.

That is essentially what Plaintiffs are attempting to do here. The hearing officer found, and the District does not contest, that E.B. was denied a FAPE for the 2017-2018 school year. *See* A.R. at 26–33. The hearing officer also found that the failure to accept Dr. Pascualvaca's IEE or to conduct another IEE and the failure to review Plaintiffs' other submitted medical evaluations of E.B. were procedural violations of the IDEA, which he ordered the District to correct. *Id.* at 35–36. It might be that those violations operated to deny E.B. a FAPE for the

2017-2018 school year, but, as discussed above, "[w]hether the Hearing Officer based such a finding on one, or two, or three alleged violations is irrelevant—the result would be the same." *Adams*, 285 F. Supp 3d at 391. It is already uncontested that E.B. was denied a FAPE for the 2017-2018 school year because DCPS failed to appropriately update his IEP. As such, Plaintiffs are already entitled to relief. And with the procedural violations themselves remedied by the hearing officer, all Plaintiffs ask this Court is for a legal determination that the hearing officer was wrong. The Court cannot do so. Because the hearing officer already determined that the failure to update E.B.'s IEP prior to the 2017-2018 school year denied him a FAPE, and Plaintiffs are merely claiming that "he should have found yet *more* ways in which the [failure to update the] Plan . . . violated [the] IDEA," *Adams*, 285 F. Supp. 3d at 393, the Court finds that claims six and seven are moot and grants the District's motion for summary judgment on those claims.[5]

### 4. Plaintiffs Are Entitled to Full Reimbursement for Dr. Pascualvaca's IEE

The Court moves on to Plaintiffs' claim for the full reimbursement of the IEE Dr. Pascualvaca conducted for E.B. Plaintiffs argue that, pursuant to the IDEA, DCPS was required to pay for the IEE. Pls.' MSJ Mem. Supp. 18. Plaintiffs further argue that the hearing officer erred in finding that the IEE was not compliant with DCPS requirements and that its cost did not

---

[5] In the context of fee petitions in IDEA cases, the District is fond of arguing that plaintiffs who only prevail on a small percentage of their claims are only entitled to a small percentage of their requested attorneys' fees. The Court notes that when, as here, many of the rejected claims are claims in the alternative seeking the same relief the plaintiffs already obtained in the HOD, that argument fails. *See, e.g.*, *McAllister v. District of Columbia*, 21 F. Supp. 3d 94, 109 (D.D.C. 2014) (rejecting District's argument that success on only a third of claims warranted reduction of fee award by two thirds when claims raised interrelated issues); *see also Burks v. District of Columbia*, No. 1:18-cv-2726 (TNM/GMH), 2019 WL 2189488, at *9 (D.D.C. Apr. 16, 2019) (noting that "the Supreme Court has explicitly rejected a default 'mathematical approach' in determining the reduction of a fee award" (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 435 n.1 (1983)).

reflect the prevailing market cost for a neuropsychological IEE.  *Id.* at 17–18.  Here, the Court must agree with Plaintiffs.

As discussed above in part II.A., a parent who "disagrees with an evaluation obtained by the public agency" is entitled under the IDEA "to an independent educational evaluation at public expense."  34 C.F.R. § 300.502(b)(1).  When faced with a request for an independent educational evaluation ("IEE"), the public agency must either "(i) file a due process complaint . . . to show that its evaluation is appropriate; or (ii) [e]nsure that an [IEE] is provided at public expense, unless the agency demonstrates in a hearing . . . that the evaluation obtained by the parent did not meet agency criteria."  *Id.* § 300.502(b)(2).  By its own terms, § 300.502(b)(2) makes clear that the burden is on the agency to show at a due process hearing that a parent-obtained IEE is inadequate.  *Id.*; *see, e.g.*, *Damarcus*, 190 F. Supp. 3d at 59; *Seth B. ex rel. Donald B. v. Orleans Parish Sch. Bd.*, 810 F.3d 961, 972 (5th Cir. 2016).  However, courts disagree as to whether § 300.502(b)(2)(ii) requires the agency to initiate a due process hearing to challenge an IEE it deems inappropriate, or whether the regulation allows the agency to challenge the IEE at a parent-initiated hearing.  *Compare Damarcus*, 190 F. Supp. 3d at 59 ("To the extent the District believed that plaintiffs' reimbursement request was unreasonably high, it was obligated to initiate a due process hearing, which it did not." (citing 34 C.F.R. § 300.502(b)(2)(ii))), *and Jefferson Cty. Bd. of Educ. v. Lolita S.*, 581 F. App'x 760, 765 (11th Cir. 2014) (finding no reversible error when hearing officer awarded parents cost of IEE because "[t]he [school] Board did not file a due process request"), *with Seth B.*, 810 F.3d at 968–70 (finding that the plain text of § 300.502(b)(2)(ii) "does not require the agency to initiate a hearing"); *see also P.R. v. Woodmore Local Sch. Dist.*, 256 F. App'x 751, 755 (6th Cir. 2007) (finding that § 300.502(b)(2)(i), which requires the agency to "[f]ile a due process complaint to

request a hearing to show that its evaluation is appropriate" if a parent requests an IEE, did not actually require the agency to pay for the cost of the IEE if it failed to initiate a hearing and instead challenged the IEE at a parent-initiated hearing).

Here, the hearing officer found that Plaintiffs were not entitled to reimbursement for Dr. Pascualvaca's IEE because the IEE did not include a classroom observation of E.B., "which is a DCPS requirement for neuropsychological evaluations," and because Plaintiffs had "failed to establish that they were not able to obtain an IEE . . . at the cost approved by DCPS." A.R. at 36. The Court finds that the HOD was in error. Assuming the District could challenge the inappropriateness of Plaintiffs' IEE at a parent-initiated due process hearing rather than initiating a due process hearing of its own,[6] the hearing officer erred "by shifting the burden onto the Plaintiffs," Pls.' MSJ Mem. Supp. 17, when it was the District who was required to "demonstrate in a hearing" that the IEE was inappropriate, 30 C.F.R. § 300.502(b)(2)(ii). *Cf. Damarcus*, 190 F. Supp. 3d at 59 n.9 ("[I]t may have been reasonable to overlook the technical failure to 'file' a complaint, because the issue was properly presented for resolution; however, the transcript makes clear that plaintiffs improperly shouldered the burden of proof on this issue.").

With the burden appropriately placed on the District, neither conclusion in the HOD is supported by the evidence presented at the due process hearing. As to the cost of the IEE, the hearing officer determined that Plaintiffs had failed to establish Dr. Pascualvaca charged the prevailing market rate because they only presented her testimony, and not any additional data about market rates in the D.C. area. A.R. at 36. Placing the burden on the District, as Plaintiffs

---

[6] Without taking a position on the issue, the Court notes that the Department of Education has interpreted § 300.502(b)(2)(ii) to require the agency to initiate a hearing in order to challenge a parent's IEE. *See, e.g.*, Guidance Letter from Stephanie S. Lee, Office of Special Educ. and Rehabilitative Servs., U.S. Dep't of Educ. (Oct. 9, 2002), https://sites.ed.gov/idea/files/idea/policy/speced/guid/idea/letters/2002-4/redact100902iee4q2002.pdf.

point out, "DCPS offered *no* evidence via testimony or exhibits," Pls.' MSJ Mem. Supp. 16, to contradict Dr. Pascualvaca's testimony. The only contrary indication as to what the market rate may be comes from one of Plaintiffs' own exhibits, an e-mail from DCPS dated February 19, 2017 in which DCPS claims without citation or support that "[t]here are many providers in DC that adhere to [the DCPS] price." A.R. at 794. This is simply not enough to meet the District's burden to demonstrate that Dr. Pascualvaca's charged rate is unreasonable, "[w]ithout more data on the rate for school system financed neuropsychological evaluations in the District." *Id.* at 36.

The IEE's compliance with District requirements for neuropsychological evaluations is a closer call, but again, the Court finds that the District fell short of meeting its burden. The hearing officer summarily concluded that the classroom observation was a DCPS requirement for neuropsychological evaluations, *id.*, presumably based on the evidence presented at the hearing. But the evidence presented at the hearing does not support that conclusion. As Plaintiffs point out, "[t]here is . . . no evidence in the record as to what [DCPS] requires in terms of a neuropsychological evaluation." Pls.' MSJ Mem. Supp. 17. The letter DCPS issued Plaintiffs to approve the IEE mentions a "parent guide" that provides the "DCPS standards for the assessment type authorized." A.R. at 795. But that guide is not included in the record. Instead, the only evidence provided as to the necessity for the classroom evaluation comes from the testimony of those present at the June 14, 2017 IEP meeting. Collette recalled at the due process hearing that the school psychologist, Joe Conlon, had objected to the IEE because of the lack of classroom evaluation and had indicated that the classroom evaluation could "not be waived." *Id.* at 1460–62. When asked what that meant, Collette indicated that she did not know but that "from the context of the conversation, [she] thought that . . . DCPS had a requirement for a classroom evaluation." *Id.* at 1462. Daniel Hayden, a health and physical education teacher at Murch, *see*

*id.* at 1598, next testified that Conlon had stated at the June 14, 2017 meeting that the IEE was "not complete based on the checklist he need[ed] in order to accept the evaluation[]." *Id.* at 1628–29.

Taken alone, that testimony suggests that the classroom observation was in fact a DCPS requirement. But Conlon himself later testified. And while Conlon explained that he was "supposed to check to see whether the outside assessment meets all of the criteria" set by DCPS pursuant to a checklist, he also testified that he had decided to reject Dr. Pascualvaca's evaluation because "in [E.B.]'s case *I thought* that the outside assessment—the observation was a critical point." A.R. at 1760 (emphasis added). Conlon's testimony suggests that the classroom observation is not in fact a DCPS requirement for all neuropsychological evaluations, but rather a component he believed was required to render the evaluation effective in this particular case. And this inference is supported by the fact that DCPS paid for the portion of the evaluation cost it had authorized, which it presumably would not have done if the evaluation was inappropriate. It may well be that a classroom observation is required by DCPS in all neuropsychological evaluations, but, without more evidence, the District did not meet its burden to demonstrate at the due process hearing that this is the case. Accordingly, it was error for the hearing officer to reject Plaintiffs' request for full reimbursement of Dr. Pascualvaca's IEE. The Court grants Plaintiffs summary judgment as to claim eight and will order the District to pay for the remainder of the cost of the evaluation.

### 5. The Hearing Officer Awarded Inadequate Relief to Plaintiffs

Next, the Court reviews Plaintiffs' claim that the hearing officer awarded them inadequate relief after finding the denial of a FAPE to E.B. for 2016-2017 and 2017-2018. Plaintiffs argue that the hearing officer failed to rule on their request to have E.B. prospectively

placed at Auburn and improperly calculated what compensatory education E.B. was entitled to for the denial of a FAPE for 2016-2017. *See* Pls.' MSJ Mem. Supp. 20–21. Defendants retort that the hearing officer's award of relief was appropriate: because Plaintiffs could not show prospective relief was appropriate and "failed to prove . . . damages" as to what compensatory education was required, the hearing officer "in his discretion, . . . determined to award an additional portion of the ultimate relief Plaintiff[s] sought—relief . . . [they] w[ere] not otherwise entitled to." Defs.' MSJ Mem. Supp. 15. The Court disagrees. Because the hearing officer ignored the standard for determining what compensatory education is appropriate and refused to rule on Plaintiffs' request for prospective placement, the Court grants Plaintiffs summary judgment.

"When a hearing officer . . . concludes that a school district has failed to provide a student with a FAPE, it has 'broad discretion to fashion an appropriate remedy,' which . . . can include compensatory education." *B.D. v. District of Columbia*, 817 F.3d 792, 797–98 (D.C. Cir. 2016) (quoting *Boose v. District of Columbia*, 786 F.3d 1054, 1056 (D.C. Cir. 2015)). An award of compensatory education "aims to put a student . . . in the position he would be in absent the FAPE denial," *id.* at 798, and it accordingly "must be reasonably calculated to provide the educational benefits that likely would have accrued from special education services the school district should have supplied in the first place," *id.* (quoting *Reid*, 401 F.3d at 524). The D.C. Circuit has thus "explicitly disavowed" compensatory education in the form of "cookie-cutter" lump-sum awards of compensatory education when the hearing officer does not explain how the remedy is tailored to provide the services the student was denied. *Branham*, 427 F.3d at 11 (quoting *Reid*, 401 F.3d at 523). And it has emphasized that "[i]n carrying out the complicated work of fashioning such a remedy, the . . . Hearing Officer should play close attention to the

question of assessment," including ordering new assessments to be conducted if necessary to determine how best to provide the educational services denied to the student. *B.D.*, 817 F.3d at 800.

In addition to ordering compensatory education, a hearing officer can also remedy the denial of a FAPE by ordering prospective relief. While "retrospective relief [is] designed to compensate for *yesterday's* IDEA violations, . . . prospective relief [is] aimed at ensuring that the child receives *tomorrow* the education required by IDEA." *Branham*, 427 F.3d at 11. That relief, too, must be tailored to meet the child's specific needs. *See id.* at 11–12. When determining whether prospective placement is appropriate, the D.C. Circuit has thus pointed to a list of factors to consider, including "the nature and severity of the student's disability, the student's specialized educational needs, the link between those needs and the services offered by the private school, the placement's cost, and the extent to which the placement represents the least restrictive educational environment." *Id.* at 12 (citing *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist.*, 458 U.S. at 202).

Here, the hearing officer acknowledged the standard for evaluating compensatory education set in *B.D.*, including that the Circuit in *B.D.* "encouraged hearing officers to order further assessments if needed to discern a student's needs." A.R. at 39. But he determined that, given the numerous assessments E.B. had been subjected to, "the value of a further assessment . . . [was] doubtful." *Id.* Despite noting that "[o]n this record, [he] ha[d] no way of determining how much more progress [E.B.] might have made" had he not been denied a FAPE in 2016-2017, *id.*, the hearing officer then went on to award E.B. compensatory education in the form of the costs of attendance at Auburn for the rest of the 2017-2018 school year, without in any way explaining how that award provided the educational benefits denied E.B. during the 2016-2017

school year, *id.* at 39–40. Instead, the hearing officer justified the award by noting that Plaintiffs had also asked for E.B.'s prospective placement at Auburn, that it was "problematical" whether Auburn "would meet all of the criteria . . . enunciated in [*Branham*]," and that he would "in [his] discretion" award placement at Auburn for the rest of 2017-2018 as compensatory education. *Id.* at 39.

When evaluated against the standard set by the D.C. Circuit, the HOD's award of compensatory education comes woefully short. The hearing officer did not attempt to fashion an award of compensatory education specifically directed at remedying the denial of a FAPE to E.B. in 2016-2017. *See B.D.*, 817 F.3d at 797. In fact, he explained that, on the record before him, he had insufficient information to make that calculation. *See* A.R. at 39. Neither did he address the "problematical" issue of whether Auburn would be a suitable prospective placement for E.B. going forward. *Id.* In order to avoid making these difficult determinations, the hearing officer resolved to award part of the prospective relief sought by Plaintiffs *as compensatory education*, failing to explain how that relief was intended to remedy the denial of educational services in 2016-2017 and issuing exactly the kind of "cookie-cutter" award the Circuit has explicitly disavowed. *Reid*, 401 F.3d at 523. The hearing officer also did not determine what baseline level of specialized education E.B. needs, only that whatever Murch provided under the October 2016 IEP was not enough and that the services E.B. received at Auburn were better. As a result, the HOD contains no meaningful metric to determine what level of compensatory education would be appropriate to remedy past denial of educational services—or what prospective education would meet E.B.'s educational needs. Without determining this baseline, it is impossible to determine whether finishing the year at Auburn was compensatory education for the deficits E.B. experienced in the 2016-2017 school year, or simply the FAPE E.B. was

entitled to but Murch did not provide him for the 2017-2018 school year. It may well be that

Plaintiffs did not present enough evidence as to how much E.B.'s educational attainment was

delayed by the denial of a FAPE in 2016-2017.[7] But this does not give the hearing officer

latitude, in order to reach the equitable relief he deems adequate, to fashion a compensatory

education award unconnected from the goals of compensatory education.

During the 2016-2017 school year, the denial of a FAPE to E.B. had significant

consequences. He had constant difficulty getting to school in time and "missed hours of class

time." A.R. at 15. Repeated negative interactions at school led E.B. to suffer extreme anxiety,

and he was ultimately forced to drop out of Murch and to miss the end of the school year. *Id.* at

15–16. Because the HOD does not indicate how the compensatory education award is tailored

to provide the educational benefits E.B. was denied during that year—and the award in fact

appears not to have been calculated to provide those benefits—the Court vacates the award.

Rather than determining for itself what compensatory education plan is best suited for E.B., the

Court will remand this matter to the hearing officer to determine how best to remedy the denial

of educational services to E.B. during the 2016-2017 school year. *See Damarcus*, 190 F. Supp.

3d at 43 ("[W]here the administrative record lacks 'pertinent findings' and where neither party

requested 'consideration of additional evidence, the [Court] may determine that the appropriate

relief is a remand to the hearing officer for further proceedings.'" (quoting *Reid*, 401 F.3d at

526)). To the extent such a determination cannot be made on the current record, the hearing

officer is encouraged to solicit additional briefing and evidence from the parties—including

additional assessments, given that the prior assessments are now likely outdated.

---

[7] The record indicates that the hearing officer had some frustration at the due process
hearing with Plaintiffs' failure to put forward evidence regarding what compensatory education
should be available. *See* A.R. at 1833–35.

With respect to E.B.'s prospective placement, the Court again agrees with Plaintiffs that, after identifying the standard set by *Branham*, the hearing officer improperly "went on to decline to rule on Plaintiffs' request for a prospective placement." Pls.' MSJ Mem. Supp. 20. The hearing officer noted that it was problematic whether Auburn would be a satisfactory placement under *Branham*, but rather than undertaking the required analysis, declined to do so and instead essentially awarded Plaintiffs' requested prospective placement as compensatory education. *See* A.R. at 39–40. This was clearly in error. However, rather than ruling on Plaintiffs' request to award E.B. the requested prospective placement, the Court will again remand that determination to the hearing officer. The Court does so mindful of the fact that it has now been almost a year and a half since the HOD was issued. E.B. has been placed at Auburn since the start of the 2017 school year, and the Court is unable, on the current record, to determine how his disability, his educational needs, and his educational achievements have changed since then. As discussed above, with neither party presenting evidence as to E.B.'s current educational needs, "the [Court] may determine that the appropriate relief is a remand to the hearing officer for further proceedings," *Damarcus*, 190 F. Supp. 3d at 43 (quoting *Reid*, 401 F.3d at 526), and it will do so here. The Court accordingly grants Plaintiffs summary judgment on claim nine, and remands the case back to the hearing officer for a determination as to what compensatory education to award E.B. and whether prospective placement at Auburn is appropriate.

### 6. Neither Party Has Met Their Burden on Plaintiffs' Claim for Failure to Comply with the HOD

Finally, the Court addresses Plaintiffs' tenth claim, that the District failed to comply with the HOD by refusing to pay for the costs of E.B.'s placement at Auburn during the 2017-2018 school year. As an initial matter, the scope of this claim appears to have significantly narrowed since Plaintiffs filed their amended complaint. The amended complaint alleged that the District

had failed to reimburse Plaintiffs for, *inter alia*, tuition and transportation costs. Am. Compl.

¶ 77. In their reply in support of summary judgment, Plaintiffs noted that the tuition for 2017-

2018 had been paid but that transportation costs were still at issue. *See* Pls.' MSJ Reply 7. Their

motion to compel accordingly asked the Court to order Defendants to pay $919.16, the

outstanding costs of transporting E.B. to Auburn between August 31, 2017 and March 5, 2018.

*See* Pls.' Mem. Supp. Mot. Compel 7. However, before filing their opposition, Defendants paid

half of those costs, disputing the other half because Plaintiffs asked for reimbursement not just of

the travel costs for E.B.'s father driving him to school in the morning and back in the afternoon,

but rather of the father's round-trip mileage from home in the mornings and afternoons. *See*

Defs.' Opp'n Mot. Compel 8–9. The parties are therefore disputing only whether the District

should be required to pay the outstanding $452.92.[8]

With that being said, the Court moves on to the parties' arguments. Although the D.C.

Circuit has held that the IDEA does not explicitly provide a cause of action to enforce a HOD,

*see B.D.*, 817 F.3d at 801, Plaintiffs argue that they can bring a claim either pursuant to 42

U.S.C. § 1983 or because the IDEA provides an implied right of action to enforce the HOD. *See*

Pls.' Mem. Supp. Mot. Compel 4–6. The District retorts that the IDEA does not create an

implied right of action and that a § 1983 claim is not available because the IDEA does not confer

individual rights that can be enforced through § 1983. *See* Defs.' Opp'n Mot. Compel 4–6. The

District also argues that Plaintiffs have failed to exhaust their administrative remedies and that it

---

[8] Because the Court vacated the hearing officer's award of compensatory education to
E.B., that amount is likely even lower now. The compensatory education award provided for the
District to pay for E.B.'s transportation costs to Auburn between the date of the HOD, February
18, 2018, and the end of the 2017-2018 school year. *See* A.R. at 40. The $452.92 figure,
covering the costs of transporting E.B. to Auburn between August 31, 2017 and March 5, 2018,
thus presumably includes transportation costs between February 18, 2018 and March 5, 2018 to
which Plaintiffs are not entitled.

has complied with the HOD. *See id.* at 6–9. The Court first finds that Plaintiffs can enforce the HOD through a § 1983 action. However, because neither party has met their burden to show that they are entitled to summary judgment, the Court denies both Plaintiffs' and Defendants' motions for summary judgment on Plaintiffs' tenth claim.

### a. Plaintiffs Can Enforce the HOD Through a § 1983 Suit

The Court first addresses whether Plaintiffs can bring a cause of action for enforcement of the HOD. Although Plaintiffs suggest that such a cause of action either is available through a § 1983 action or can be implied from the IDEA, the Court finds that Plaintiffs can proceed under § 1983 and therefore does not address whether the IDEA provides an implied right of action.

Under the IDEA, "[a]ny party aggrieved by the findings and decisions made" in an administrative hearing has a right to bring a civil suit challenging those findings and decisions. 20 U.S.C. § 1415(i)(2)(A). In *B.D.*, the D.C. Circuit explained that a party who prevails at an administrative hearing is not "aggrieved" by the HOD itself but rather only by the other party's failure to comply with the HOD. 817 F.3d at 801. As a result, the prevailing party does not have a right of action under § 1415(i)(2)(A), because the statute's "plain text refers not simply to an 'aggrieved' party, but to one aggrieved 'by the findings and decision' of a hearing officer." *Id.* (quoting 20 U.S.C. § 1415(i)(2)(A)). However, the Circuit noted in *B.D.* that multiple courts have allowed parties seeking to enforce a HOD to bring suit under § 1983. *See id.* at 802 (citing *Mrs. W. v. Tirozzi*, 832 F.2d 748, 755 (2d Cir. 1987); *see also, e.g.*, *Robinson v. Pinderhughes*, 810 F.2d 1270, 1273 (4th Cir. 1987); *Reid v. Bd. of Educ., Lincolnshire-Prairie View Sch. Dist. 103*, 765 F. Supp. 965, 969 (N.D. Ill. 1991); *K.W. v. District of Columbia*, No. 18-2578 (RMC), 2019 WL 2010360, at *5–6 (D.D.C. May 7, 2019). In *Blackman v. District of Columbia*, 456 F.3d 167 (D.C. Cir. 2006), the D.C. Circuit itself "assume[d], without deciding," that a § 1983

claim for enforcement of the IDEA was available to the plaintiffs, when none of the parties discussed the issue on appeal. *Id.* at 172 n.6.

"[S]ection 1983 provides a civil cause of action against any person 'who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . .'" *K.W.*, 2019 WL 2010360 at *5 (quoting 42 U.S.C. § 1983). While § 1983 is "a generally and presumptively available remedy for claimed violations of federal law," *Livadas v. Bradshaw*, 512 U.S. 107, 133 (1994), a statute can only support a § 1983 action if "Congress intended to create a federal right." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002). "For a statute to create such private rights, its text must be 'phrased in terms of the persons benefited.'" *Id.* at 284 (quoting *Cannon v. University of Chicago,* 441 U.S. 677, 691 n.13 (1979)). In *Gonzaga*, the Supreme Court gave the example of Title VII, which, by providing that "[*n*]*o person* in the United States *shall* . . .be subjected to discrimination," *id.* at 284 n.3 (emphasis in original) (quoting 42 U.S.C. § 2000d), is "phrased 'with an *unmistakable focus* on the benefited class,'" *id.* at 284 (emphasis in original) (quoting *Cannon*, 441 U.S. at 691 n.13). Furthermore, even a statute that creates individual federal rights may not be enforceable through a § 1983 action if the statute "creat[es] a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983." *Blessing v. Freestone*, 520 U.S. 329, 341 (1997) (citation omitted).

Here, the District argues that the IDEA does not confer any individual rights and therefore cannot be enforced through a § 1983 action. *See* Defs.' Opp'n Mot. Compel 5–6. The District contends that the IDEA is akin to the Family Educational Rights and Privacy Act

("FERPA"), the statute at issue in *Gonzaga*, in that it is a spending legislation focused on institutional policy and institutional enforcement, rather than on conferring individual-focused rights. *See id.* The Court disagrees. As Plaintiffs point out, the purpose of the IDEA is to create rights for a specific class of individuals, children with disabilities and their parents. *See* Pls.' Reply Supp. Mot. Compel 2 (citing 20 U.S.C. § 1400(d)). The Act both creates a wide range of rights for protected individuals, and creates specific avenues for individuals to enforce those rights. *See id.* at 3. Unlike FERPA, which has "an 'aggregate' focus," *Gonzaga*, 536 U.S. at 288 (quoting *Blessing*, 520 U.S. at 343), the IDEA is thus "draft[ed] . . . with an unmistakable focus on the benefitted class," *id.* at 287 (quoting *Cannon*, 441 U.S. at 690–93). *Gonzaga* therefore does not preclude the availability of a § 1983 action to enforce rights under the IDEA.[9] In line with the multiple courts to have already found so, the Court concludes that Plaintiffs here are able to seek enforcement of the HOD through a § 1983 action.

b. Neither Party Is Entitled to Summary Judgment on Plaintiffs' HOD Enforcement Claim

Having determined that Plaintiffs can bring their claim for enforcement of the HOD through a § 1983 action, the Court now reviews whether they are entitled to summary judgment on that claim. The facts relating to the claim are undisputed, and the only remaining issue is whether the District complied with the terms of the HOD. The District argues both 1) that Plaintiffs have not exhausted their administrative remedies because they have not challenged the

---

[9] While the District does not raise the issue, the Court briefly notes that, in this particular case, the IDEA does not "creat[e] a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983." *Blessing*, 520 U.S. at 341. In *Smith v. Robinson*, 468 U.S. 992 (1984), the Supreme Court found that the precursor statute to the IDEA created such a comprehensive enforcement scheme, which precluded plaintiffs from bringing § 1983 claims that mirrored claims that could be brought under that statute. *Id.* at 1012–13. However, plaintiffs seeking to enforce a HOD are not provided with any remedy under the IDEA, and the reasoning of *Smith* is inapposite in such a situation. *See Robinson*, 810 F.2d at 1274–75.

District's refusal to fully pay for the transportation costs through the District's Office of Administrative Hearings, and 2) that it complied with the HOD by paying only for the costs of E.B.'s travel to and from school rather than for the cost of travel between his home and school twice a day. *See* Defs.' Opp'n Mot. Compel 7–9. Plaintiffs contend that "[c]ommon sense" supports that they should be compensated fully for travel to and from school twice a day. Pls.' Reply Supp. Mot. Compel 5. Finding that neither party has met their burden, the Court denies summary judgment to both Plaintiffs and Defendants.

The Court first briefly addresses exhaustion of administrative remedies, where it finds the District's argument particularly disingenuous. Between the issuance of the HOD on February 20, 2018 and just a few months ago, the District refused to pay Plaintiffs' transportation costs. Only after Plaintiffs filed their motion to compel in February 2019 did the District agree to pay a portion of the amount they requested, over a year after the HOD was issued. *See* Defs.' Opp'n Mot. Compel 8 (noting that authorization of payment to Plaintiffs was made on March 12, 2019). The District would now have the Court find Plaintiffs' claim administratively barred because they did not initiate an administrative complaint to challenge a determination that did not exist until a few weeks ago. The Court will not do so.

The Court next turns to the merits. Here, because both parties fail to meet their burden to show that they should prevail as a matter of law, the Court denies summary judgment to both. In its opposition, the District summarily argues that it has complied with the HOD by paying for only half of the transportation costs requested by Plaintiffs. *See id.* And Plaintiffs similarly contend that "[c]ommon sense" dictates they should prevail, without backing this argument with any form of legal authority. Pls.' Reply Supp. Mot. Compel 5. The District does not indicate how it usually treats such requests or whether it has a policy specifically dealing with

reimbursement for transportation costs, nor does either party point to how prior HODs awarding transportation costs have typically been interpreted.  And the Court is similarly in the dark about the typical costs of private school transportation services, which might have shed some light on the reasonableness of Plaintiffs' request.  With neither party making any substantive arguments on the issue, the Court must deny summary judgment to both.  Given the low amount at issue and the necessity to remand this case for consideration of what further relief E.B. is entitled to, the Court encourages the parties to engage further on the issue in order to resolve it without the need for further judicial intervention.

## V.  CONCLUSION

For the foregoing reasons, Defendants' motion to strike or dismiss (ECF No. 31) is **GRANTED**.  Plaintiffs' motion for summary judgment (ECF No. 37) is **GRANTED IN PART AND DENIED IN PART**.  Defendants' motion for summary judgment (ECF No. 39) is **GRANTED IN PART AND DENIED IN PART**.  Plaintiffs' motion to compel compliance with the Hearing Officer Determination (ECF No. 43) is **DENIED**.  The Court orders defendant the District of Columbia to pay for the full cost of the independent educational evaluation conducted by Dr. Pascualvaca.  Finally, the Court remands this case to the hearing officer for a determination of what compensatory education E.B. should receive and whether prospective placement at The Auburn School is appropriate.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  August 1, 2019                                      RUDOLPH CONTRERAS
                                                            United States District Judge