**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| CAMILLE COLLETTE, *et al.*, | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 18-1104 (RC) |
| | : | | |
| v. | : | Re Document No.: | 72 |
| | : | | |
| DISTRICT OF COLUMBIA, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

**MEMORANDUM OPINION**

**GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR AN AWARD OF
ATTORNEYS' FEES AND COSTS**

**I.  INTRODUCTION**

In this action, Camille Collette and Jacques Benoit ("Plaintiffs") seek an award of attorneys' fees incurred in pursuing a claim under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, which established that the District of Columbia Public Schools ("the District") failed to provide their son, E.B., with a free and appropriate public education ("FAPE").  Plaintiffs seek attorneys' fees arising from the proceedings in the amount of $364,168.15, as well as expert fees in the amount of $8,238.96 and other costs in the amount of $3,662.60.  *See* Pls.' Mot. for Att'ys' Fees and Costs ("Pls.' Mot."), ECF No. 72.  The District disputes several time entries on Plaintiffs' invoice and the amount of expert fees to which Plaintiffs are entitled.  Def.'s Opp'n to Pls.'s Mot. for Att'ys' Fees and Costs ("Def.'s Opp'n"), ECF No. 73.[1]  The Court concludes that, except for a few minor challenges raised by the District

---

[1] The sum of the District's challenges to Plaintiffs' fee request amount to only $2,936.16 of Plaintiffs' total request for $376,069.71—0.78% of the requested award.  Particularly given Plaintiffs' evident willingness to accept these minor reductions, it is not clear why the parties did

that Plaintiffs concede, Plaintiffs' requested attorneys' fees are reasonable, as are their other requested costs. Accordingly, the Court will grant in part and deny in part Plaintiffs' motion for fees and costs.

## II. FACTUAL BACKGROUND

In October 2017, Plaintiffs filed a due process complaint with the District's Office of the State Superintendent of Education alleging that the District had failed to provide their son, E.B., a FAPE in violation of the IDEA. *Collette v. Dist. of Columbia*, No. CV 18-1104, 2019 WL 3502927, at *4 (D.D.C. Aug. 1, 2019). Plaintiffs identified twelve issues relating to the District's provision of educational services between 2012 and 2018. *Id.* They sought reimbursement for placing E.B. at a private school for three years, prospective placement at the same private school in the future, and an order for the District to provide compensatory education services to E.B. *Id.*

At the conclusion of a four-day administrative hearing, Plaintiffs dropped two of their claims and the hearing officer resolved the ten remaining claims in a Hearing Officer Determination ("HOD"). *Id.* The hearing officer resolved several claims in the District's favor,[2] but found that the Fall 2016 Individualized Education Plan ("IEP") and District's subsequent failure to revise the IEP by the start of the 2017-2018 school year both denied E.B. a FAPE. *Id.*

In August 2019, Plaintiffs challenged the HOD in this Court with respect to the hearing officer's denial of a number of their claims, as well as the adequacy of the remedy they were

---

not settle but, instead, required this Court to resolve the fee request. *See DL v. Dist. of Columbia*, 924 F.3d 585, 595 (D.C. Cir. 2019) ("Not so long ago, the prevailing belief was that parties would often be able to agree on reasonable attorney's fees.") (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("Ideally, of course, litigants will settle the amount of a fee.")).

[2] The Court previously provided a detailed account of Plaintiffs' claims and their resolution in the initial HOD. *See Collette*, 2019 WL 3502927 at *4–6.

granted for the District's failure between 2016 and 2018 to provide E.B. a FAPE. *Id* at *1. This Court concluded, *inter alia*, that the hearing officer awarded inadequate relief to Plaintiffs,[3] and remanded the matter to the hearing officer to rule on prospective placement of the student and to ascertain compensatory education services. *Id.* at *15–16.

In April 2020, Plaintiffs prevailed at the hearing on remand. *See* Pls.' Mot. Ex. 2, ECF No. 72-4. E.B. was prospectively placed at the school of his choice and Plaintiffs were awarded appropriate compensatory education services. *Id.* Because Plaintiffs prevailed on remand, they now seek reimbursement for attorneys' fees, expert fees, and other costs incurred in preparation for the first administrative hearing, the proceeding in this Court, and the second administrative hearing on remand.

### III. ANALYSIS

#### A. Attorneys' Fees

1. Legal Standard for Determining Hourly Rate

The IDEA provides that "the court, in its discretion may award reasonable attorneys' fees . . . to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B)(i). The Court thus bases an award of fees on a two-step inquiry: first, whether the party seeking attorneys' fees is the prevailing party, and second, whether the requested fees are reasonable. *McAllister v. Dist. of Columbia*, 21 F. Supp. 3d 94, 99 (D.D.C. 2014), *aff'd*, 794 F.3d 15 (D.C. Cir. 2015).

Because the District does not dispute that Plaintiffs prevailed and that some award to them is appropriate, the Court turns to whether the requested fees are reasonable. *Id.*

---

[3] A detailed account of each of the motions brought in the underlying matter appears in the Court's previous opinion. *See Collette*, 2019 WL 3502927 at *7–16.

Reasonable fees are calculated by multiplying "the number of hours reasonably expended on the litigation . . . by a reasonable hourly rate." *Hensley*, 461 U.S. at 433 (1983); *see also Jackson v. Dist. of Columbia*, 696 F. Supp. 2d 97, 101 (D.D.C. 2010) (applying *Hensley* in the IDEA context). In an action for attorneys' fees following an administrative proceeding under the IDEA, the "plaintiff bears the burden of establishing the reasonableness" of the requested fees and must address "whether both the hourly rate and number of hours . . . are reasonable." *Wilhite v. Dist. of Columbia*, 196 F. Supp. 3d 1, 5 (D.D.C. 2016) (citing *Eley v. Dist. of Columbia*, 793 F.3d 97, 104 (D.C. Cir. 2015)). To establish reasonableness of the hourly rate, a plaintiff must submit evidence of "the attorneys' billing practices; the attorneys' skill, experience, and reputation; and the prevailing market rates of the relevant community." *McAllister*, 21 F. Supp. 3d at 100 (quoting *Covington v. Dist. of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995)). A plaintiff must demonstrate that the requested rates "are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Eley*, 793 F.3d at 100 (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). In the context of the IDEA, rates must specifically be consistent with "those prevailing in the community" for other IDEA litigation. *Id.*; *Joaquin v. Friendship Pub. Charter Sch.*, 188 F. Supp. 3d 1, 16 (D.D.C. 2016). Evidence may include: "surveys [that] update [fee matrices]; affidavits reciting the precise fees that attorneys with similar qualification have received from fee-paying clients in comparable cases; and evidence of recent fees awarded by the courts or through settlement to attorneys with comparable qualifications handling similar cases." *Eley*, 793 F.3d at 101 (quoting *Covington*, 57 F.3d at 1109).

Upon a satisfactory showing of evidence by a plaintiff, the burden shifts to defendant to "rebut the plaintiff's showing." *McAllister*, 21 F. Supp. 3d at 100. If neither party presents

satisfactory evidence demonstrating that their preferred hourly rate is reasonable, "the court may determine the amount of that rate by reference to the [USAO] *Laffey* matrix."[4]  *Id.*  Moreover, the Court has discretion to reduce a fee award in the event of only limited or partial success on the merits.  *Hensley*, 461 U.S. at 433–34.

## 2. Reasonableness of the Hourly Rate

Plaintiffs contend that the rates charged by their counsel, which ranged from $581 per hour to $665 per hour, are reasonable and supported by their counsel's billing practices; skills, experience, and reputation; and the prevailing market rate in the relevant community.  Pls.' Mem. of Points and Authorities in Supp. of Pls.' Mot. for Att'ys' Fees ("Pls.' Mem.") at 5–11, ECF No. 72-2; *see Covington,* 57 F.3d at 1107.  Importantly, the District does not challenge the reasonableness of the rates that the Plaintiffs' counsel charged.  Def.'s Opp'n at 1 n.1.  Given the District's acceptance of Plaintiffs' claimed hourly rates, the Court will only briefly review the evidence presented by Plaintiffs in support of their motion.  Plaintiffs have provided evidence from each of the three relevant categories to support their assertion that their hourly rates based on the USAO *Laffey* matrix are reasonable.[5]

---

[4] The USAO *Laffey* Matrix is prepared by the Civil Division of the United States Attorney's Office for the District of Columbia.  It presents a matrix of hourly rates for attorneys of varying experience levels and paralegals/law clerks for use when a "fee-shifting" statute permits the recovery of reasonable attorneys' fees.  *See generally Eley*, 793 F.3d at 100–04.

[5] Courts have previously analyzed whether IDEA litigation is sufficiently complex to warrant awards of attorneys' fees in the full amount proscribed by the LSI *Laffey* matrix.  *See Reed v. Dist. of Columbia*, 843 F.3d 517, 526 (D.C. Cir. 2016); *Joaquin* 188 F. Supp. 3d at *15–20.  The LSI *Laffey* matrix is based on surveys of rates charged for complex federal litigation and increases based on legal-services inflation, while the USAO *Laffey* matrix increases based on general inflation.  *See DL*, 924 F.3d at 589-90 (D.C. Cir. 2019).  In 2015, the methodology used to calculate the rates in the USAO *Laffey* matrix changed and significantly departed from the methodology used to calculate rates in the LSI *Laffey* matrix, yielding rates significantly below the LSI *Laffey* matrix rates.  *Id.*  The new methodology "encompasses a far broader scope of fees charged by lawyers practicing in different sizes of offices, across different types of specialties, in both litigation and non-litigation types of matters."  *Jones v. Dist. of Columbia*, 2019 WL

First, Plaintiffs submitted surveys that support the assertion that the rates in the USAO *Laffey* matrix are the prevailing market rates. *See* Pls.' Mot. Ex. 6, ECF No. 72-8; Pls.' Mot. Ex. 7, ECF 72-9. Plaintiffs note that the rates reflected in the survey results for attorneys in the D.C. area indicate that prevailing market rates in D.C. are higher than the USAO *Laffey* matrix rates requested by their attorney. Pls.' Mem. at 9.

Second, Plaintiffs have also included several affidavits from local practitioners specializing in special education cases. *See* Pls.' Mot. Exs. 8–12 (Declarations of Alana Hecht, Nicholas Ostrem, Charles Moran, Carolyn Houck, and Douglas Tyrka, respectively), ECF Nos. 72-10, 72-11, 72-12, 72-13, 72-14. Several indicate that their typical rates for paying IDEA clients are consistent with the USAO *Laffey* matrix. *See, e.g.*, Ostrem Decl. ¶ 3 ("The Ostrem Firm has always matched its hourly rates to what is commonly known as the "*Laffey* matrix . . . ."); Moran Decl. ¶ 11 ("My firm has always set its rates with reference to a *Laffey* matrix."); Houck Decl. ¶ 3 ("The hourly rates that I charge my clients are in line with the rates set forth in the current Laffey attorney's fees matrix."); Tyrka Decl. ¶ 2 ("From its inception in 2005 Tyrka & Associates has always exclusively charged at hourly rates matching those in what is commonly known as 'the LSI *Laffey* matrix' . . . .").

Third, Plaintiffs reference several cases in which their counsel's billing rates, which were consistent with the USAO *Laffey* matrix, were upheld. *See, e.g.*, *Jones*, 2019 WL 652349; *Garvin v. Dist. of Columbia*, 851 F. Supp. 2d 101 (D.D.C. 2012); *Cox v. Dist. of Columbia*, 754 F. Supp. 2d 66 (D.D.C. 2010).

---

652349, at *8 (D.D.C. Feb. 15, 2019) (citing *Makray v. Perez*, 159 F. Supp. 3d 25, 51 (D.D.C. 2016)). The Court follows the approach of the court in *Jones* and determines that no inquiry into the complexity of IDEA litigation is necessary to determine whether use of the USAO *Laffey* matrix is appropriate for determining the reasonableness of attorneys' rates in IDEA litigation, as the matrix is no longer applicable only to complex federal litigation. *See id.*

Given the evidence that Plaintiffs have proffered in support of their contention that their requested attorneys' fees are reasonable, and the District's lack of opposition to this contention, the Court finds that the claimed hourly rates are reasonable and will therefore award the attorneys' fees at the rates requested.

### 3. Reasonableness of Hours Billed

Fee awards may be reduced when a plaintiff "has failed to prevail on a claim that is distinct in all respects from his successful claims[.]" *Hensley,* 461 U.S. at 440. In that instance, "the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee." *Id.* The District urges the Court to strike specific items from Plaintiffs' attorney's invoice related to classroom observations, given that they allege Plaintiffs did not prevail on the issue of classroom observations. Def.'s Opp'n at 2–3. Because the District does not contest any of the other time entries, the Court finds that all other entries are reasonable.

Turning to the contested billing entries, Plaintiffs indicate their willingness to accept the reduction, without waiving their position that the entries are compensable. Pls.' Reply to Def.'s Mot. for Att'ys' Fees and Costs ("Pls.' Reply") at 2, ECF No. 74. Deducting the line items in question would reduce the award by $697.20.[6] The District maintains that these line items each reference classroom observations, and that Plaintiffs neither raised nor prevailed on that issue in the first administrative hearing. Def.'s Opp'n at 2–3. Plaintiffs allege that the items relate to "consultations with a potential expert witness and generally addressed [the witness's] need to conduct a classroom observation to be able to adequately inform Plaintiffs regarding case issues." Pls.' Reply at 2.

---

[6] The line items on Plaintiffs' invoice relating to classroom observations are dated 12/13/2016, 2/15/2017, 3/8/2017, 3/10/2017, 3/23/2017. Def.'s Opp'n. at 3 n.2.

7

In some IDEA cases, a plaintiff may claim that a school's formulation of an IEP is procedurally deficient because an expert did not conduct first-hand classroom observations of the student. *See Richardson v. Dist. of Columbia*, 273 F. Supp. 3d 94, 98 (D.D.C. 2017); *McLean v. Dist. of Columbia*, 264 F. Supp. 3d 180, 182 (D.D.C. 2017). In this case, however, the issue of classroom observations only arose because *the District's* school psychologist, in an IEP meeting, suggested that the neuropsychologist's IEE was incomplete because it did not include classroom observation. Pls.' Mot. Ex. 1 at 28, ECF No. 72-3. The IEP team then declined to incorporate recommendations from that evaluation into the IEP. *Id.* Because Plaintiffs were satisfied with the neuropsychologist's recommendations and only took issue with the school's failure to incorporate the recommendations into the IEP, they had no reason to argue in the administrative hearing that the lack of classroom observations made the IEE procedurally deficient. *See id.* As a result, it is not clear why the District believes that the particular billing items relate to a potential request for classroom observations that Plaintiffs ultimately did not make.

Additionally, when the issue of classroom observations arose before this Court, it found that the administrative record did not support an assertion that classroom observation was a District of Columbia Public School requirement for neuropsychological evaluations and granted summary judgment on the issue to Plaintiffs, ordering the District to pay the full cost of the evaluation. *Collette*, 2019 WL 3502927 at *14–15. Because Plaintiffs had no obvious reason to raise the issue of classroom observations and prevailed on the issue in the only context in which it arose before this Court, the Court is uncertain Plaintiffs should have withdrawn their request for fees on this point. Nonetheless, given Plaintiffs' concession, the Court will reduce these specific entries from the fee request.

### B. Expert Fees and Costs

Plaintiffs additionally seek $8,238.96 in expert fees and $3,662.60 in other costs, to total $11,901.56. Though the IDEA itself does not entitle parties to recover expert fees, *see Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 297 (2006), expert fees are recoverable in an IDEA case in the District of Columbia under D.C. Code § 38-2571.03(7), which states:

> In any action or proceeding brought under Part B or Part C of IDEA, a court, in its discretion, may award reasonable expert witness fees as part of the costs to a prevailing party: [w]ho is the parent of a child with a disability . . . based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished; provided, that the maximum award shall be $6,000 per action or proceeding . . . .

Plaintiffs bear the burden of establishing entitlement to an award of expert fees by showing that the expert's rates are reasonable and "based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." D.C. Code § 38-2571.03(7)(A)(i), (B); *see Wright, Next Friend of J.J. v. Dist. of Columbia*, No. 18-cv-2818, 2019 WL 4737699, at *7 (D.D.C. Sept. 28, 2019) (denying without prejudice plaintiffs' request for expert costs when plaintiffs failed to provide documentation establishing that the expert's rates "are based on the rates prevailing in the community"); *Pugh v. Dist. of Columbia*, 2018 WL 6790170, at *10 (D.D.C. Sept. 28, 2018) (recommending same). Here, Plaintiffs provide no supporting documentation to establish the reasonableness of any of the experts' rates. But, given that the District does not challenge the requested amount of expert fees, the Court awards the requested expert fees at the maximum amount authorized by statute—$6,000.

With respect to other costs, the Court will award Plaintiffs $3,662.60 associated with photocopies, parking, mileage, and filing fees incurred in the administrative hearings and litigation, an amount that the District does not challenge. *See Briggs v. Dist. of Columbia*, 73 F. Supp. 3d 59, 64 (D.D.C. 2014) (awarding costs for mileage, parking, and postage); *McClam v.*

9

*Dist. of Columbia*, 808 F. Supp. 2d 184, 190–91 (D.D.C. 2011) (awarding costs for copying, faxing, and mileage).

### C. Calculation of Fee Award

Based on the Court's conclusions regarding hourly rates, hours billed, and costs, Plaintiffs will be awarded $363,470.95 in attorneys' fees for work on the IDEA proceedings, plus $6,000 in expert fees and $3,662.60 in general costs, for a total award of $373,133.55.[7]

### IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Fees and Costs (ECF No. 72) shall be **GRANTED IN PART AND DENIED IN PART**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: March 15, 2021                                      RUDOLPH CONTRERAS
                                                           United States District Judge

---

[7] Given operational challenges due to Covid-19, the District requests that post-judgment interest begin accruing 60 days from the date of the Court's order (rather than 30 days, as Plaintiffs initially requested). Def's Opp'n at 5. Plaintiffs do not object to this request. Pls.' Reply at 3. Therefore, post-judgment interest on the award will begin to accrue 60 days following the issuance of this Court's order at the statutory rate. *See* 28 U.S.C. § 1961(a).